## Richmond

VIRGINIA HINCHEY

V.

NEAL A. OGDEN

October 14, 1983.

Record No. 810520.

Present: All the Justices.

*Moody E. Stallings, Jr. (Hanson and Stallings, on brief), for appellant.*

*Robert L. Mills (Gerald L. Baliles, Attorney General; Walter A. McFarlane, Deputy Attorney General; J. Westwood Smithers, Jr., Assistant Attorney General; Reynolds, Smith & Winters, on brief), for appellee.*

POFF, J., delivered the opinion of the Court.

This is a plaintiff's appeal from a judgment sustaining a defendant's plea of sovereign immunity.

The motion for judgment alleged that an eastbound motorcycle and a westbound automobile collided head-on in the eastbound lane of the Norfolk-Virginia Beach Expressway. Virginia Hinchey, a passenger on the motorcycle, sued Donald Lee Henderson, operator of the automobile, and Neal A. Ogden in his capacity as Superintendent of the Expressway. Plaintiff demanded judgment against the defendants, jointly and severally, in the sum of $1,500,000 on account of personal injuries Hinchey sustained in

the collision. Plaintiff alleged that Henderson was guilty of actionable negligence in the operation of his automobile and that Ogden breached his official duty to provide barriers and other traffic control devices sufficient to prevent vehicles from entering the wrong lane of travel.

Invoking the doctrine of sovereign immunity, counsel for Ogden, acting on behalf of the Commonwealth, filed a motion to dismiss and introduced testimony and certain documentary exhibits. Upon consideration of legal memoranda and argument by counsel, the trial court ruled that the Expressway "is a state highway facility, owned by the Commonwealth of Virginia and operated through the State Department of Highways and Transportation, and that Neal A. Ogden . . . is an employee of the Commonwealth of Virginia who exercises judgment and discretion in the discharge of an essential governmental function, whose acts are the acts of the Commonwealth and he may not, therefore, be sued for negligence in the performance of his duties without the consent of the Commonwealth of Virginia."

By final judgment entered January 6, 1981, the trial court sustained the motion to dismiss "as to the defendant, Neal A. Ogden" and we granted Hinchey an appeal.[1] Pursuant to Code § 2.1-121, the Attorney General, in company with other counsel, represented Ogden at the bar of this Court.

The issue framed on appeal requires a summary of the provisions of the State Revenue Bond Act. The purpose of the Act, originally enacted in 1940, Acts 1940, c. 399, was to enable the State Highway Commission (now, the State Highway and Transportation Commission), acting through the Department of Highways (now, the Department of Highways and Transportation), to finance the acquisition, construction, improvement, operation, and maintenance of certain public projects in a manner consistent with the constitutional constraints against State indebtedness. The Act, which we found constitutionally sufficient in *Almond* v. *Gilmer,* 188 Va. 822, 51 S.E.2d 272 (1949), authorized eight named projects. The Norfolk-Virginia Beach Expressway was authorized by amendment, Acts 1962, c. 273, and the Act as successively amended is now codified in Code §§ 33.1-267, *et seq.*

---

[1] For the reasons stated in *Bowles* v. *Richmond,* 147 Va. 720, 129 S.E. 489 (1925), *aff'd. on rehearing,* 147 Va. 729, 133 S.E. 593 (1926), we are of opinion that the judgment was appealable. *Cf. Wells* v. *Whitaker,* 207 Va. 616, 151 S.E.2d 422 (1966).

■ The Act empowered the Commission to acquire title to property required for construction in the name of the Commonwealth; to construct, improve, operate, and maintain the designated projects; to issue tax-exempt revenue bonds of the Commonwealth; to fix and collect tolls from users of the projects; and to deposit the proceeds of the bonds and the revenues received from the tolls in a "special account" in the State Treasury, there to be held in trust under a trust indenture executed by the Commission and an eligible trustee.

■ Under the Act, all proceeds of the bonds and tolls held in the special account must be applied solely to costs of acquisition, construction, improvement, operation, and maintenance of the projects and to the payment of principal and interest on the bonds; the issuance of the bonds does not obligate the State to appropriate funds to redeem or service the bonds; and the bonds do not constitute a debt of the Commonwealth or a pledge of the faith and credit of the Commonwealth. The trust indenture filed as an exhibit in this case complies with all relevant provisions of the Act, including insurance requirements.

■ With commendable professional candor, counsel for the parties have narrowed the issue on appeal. On brief, Hinchey acknowledges that "[t]his Court is not faced with the complicated and often difficult decision of sovereign immunity, which involves governmental functions vs. proprietary functions, simple negligence vs. gross negligence, and scope of the employee's duties" and that the Commonwealth "cannot be sued without its permission, and no such permission has been granted in this matter." The parties recognize that we have consistently held that the construction, improvement, operation, and maintenance of public highways is a governmental rather than a proprietary function. The record shows that, although the salary of the Superintendent of the Norfolk-Virginia Beach Expressway is a charge against the "special account", Ogden is a veteran employee of the Department of Highways and Transportation and that the duties Hinchey alleges Ogden breached are within the scope of the discretionary duties delegated to him. Thus, Ogden, sued in his official status, enjoys whatever immunity the sovereign may be entitled to claim.

■ But, Hinchey says, "[t]he sovereign immunity doctrine has consistently been upheld for one purpose and one purpose only, to protect the public funds" and the crux of her argument is

that "the defendant is not entitled to the defense of sovereign immunity" because she "is not seeking funds from the State Treasury". Rather, she reasons that if she should win a judgment against Ogden, she "could collect said judgment from revenues collected by the tolls" or "against a liability insurance policy".

The costs of operation and maintenance as defined in the Act and trust indenture are payable out of toll revenues and, arguably, a judgment won by Hinchey against Ogden would satisfy that definition. But Hinchey is mistaken when she assumes that toll collections are the only source of funds potentially available to pay such costs. We have held that the Act authorizes the Commission to use State funds derived from other sources to defray costs incurred in the operation and maintenance of "special account" projects, *Almond* at 841, 51 S.E.2d at 279, and Section 705 of the Expressway's trust indenture recognizes that authority. The record shows that, well before the toll road began operations, the Commission adopted a resolution expressing its intention to exercise that authority by making annual allocations in its budget for the benefit of the Expressway. Hence, it appears that State funds as well as toll revenues could lawfully be contributed to pay a portion of any judgment Hinchey might win against Ogden on account of his operation of the Expressway.

Even if no State funds were at hazard, however, we disagree with Hinchey's contention that the protection of the public purse is the sole justification for the doctrine of sovereign immunity.[2]

Of course, the tax-paying public has an interest in maintaining the integrity of the public treasury. But the public also has a vital interest in the orderly administration of government, and, as a general rule, the sovereign is immune not only from actions at law for damages but also from suits in equity to restrain the government from acting or to compel it to act. *See Larson* v. *Domestic*

---

[2] *Morris* v. *Tunnel District,* 203 Va. 196, 123 S.E.2d 398 (1962), on which Hinchey relies does not support her contention. There, we held that, because an obligation of the Elizabeth River Tunnel District was not a charge upon the State Treasury it was not an obligation of the Commonwealth for purposes of determining venue under former Code §§ 8-38(9), -40. Yet, notwithstanding the character of the District's obligation, we reaffirmed an earlier decision that the District was " 'immune from any action predicated on tort liability.' " *Id.* at 197, 123 S.E.2d at 399. Nothing we said in *Morris* implies that the doctrine of sovereign immunity rests upon the singular underpinning Hinchey suggests.

*& Foreign Corp.,* 337 U.S. 682, *reh'g denied,* 338 U.S. 840 (1949); *Fitts* v. *McGhee,* 172 U.S. 516 (1899).

> The doctrine of sovereign immunity from suit, rooted in the ancient common law, was originally based on the monarchical, semireligious tenet that "the King can do no wrong." In modern times, it is more often explained as a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities. The public service might be hindered and the public safety endangered if the supreme authority could be subjected to suit at the instance of every citizen, and consequently controlled in the use and disposition of the means required for the proper administration of the government.

72 Am. Jur. 2d. *States, Territories, and Dependencies* § 99 (footnotes omitted).

Here, the principal justification for upholding the claim of sovereign immunity is the need for order and uniformity in the administration of the affairs of government. Acting through the Commission, the Commonwealth manages a statewide network of public highways. Most are free to the user, some are toll roads, but all are parts of an integrated system, constructed and maintained on land acquired by the Commonwealth by purchase or condemnation.[3] Under the theory Hinchey suggests, the Commonwealth would be liable in part and immune in part for its acts and omissions in the acquisition, construction, and administration of the system, depending solely upon the segment where the cause of action arose and the method chosen to finance that segment. We find nothing in the provisions of the State Revenue Bond Act or any other statute to support that theory. To transform the integrated highway system into an immunity-liability patchwork would disrupt the orderly process of administration and hamper uniform performance of an essential governmental function, and we reject the rule Hinchey urges.

Alternatively, Hinchey maintains that the Commonwealth has waived any immunity it might otherwise enjoy in the operation of the toll road. The waiver argument is two-fold.

---

[3] While bondholders are *cestuis que trust* of the toll revenues in the "special account", they have no legal or equitable interest in the property of the toll road.

■ First, Hinchey cites *Southern Bridge Co.* v. *Department of Hys., State of La.,* 319 F. Supp. 948 (E.D. La. 1970), where she says "the United States District Court found that the language 'power to sue and be sued in its own right' removed the State Department of Highways from the sovereign immunity shield." Hinchey points to nothing in the statutes or the documents filed as exhibits below which vests the Expressway with such power. In any event, the law of Virginia disposes of this argument.

> The language "sue and be sued," "plead and be impleaded," "contract and be contracted with," are words affording a procedural right only and do not constitute a waiver of immunity or a consent to suit.

*Tunnel District* v. *Beecher,* 202 Va. 452, 457, 117 S.E.2d 685, 689 (1961).

■ Second, Hinchey cites selective authority in other jurisdictions for the proposition that a state waives sovereign immunity when it elects to protect a governmental function with liability insurance. Our research discloses that courts in other states are sharply divided on the question, and because of the diversity of constitutional and statutory provisions among the states, it is difficult to discern the majority view. *See* annot. 71 A.L.R.3d 6 (1976). In Virginia, however, "waiver is an *intentional* relinquishment of a known right", *Stanley's Cafeteria, Inc.* v. *Abramson,* 226 Va. 68, 74, 306 S.E.2d 870, 873 (1983), and there can be no waiver of sovereign immunity by implication.

> We have consistently held that waiver of immunity cannot be implied from general statutory language or by implication. Statutory language granting consent to suit must be explicitly and expressly announced.[4]

*Tunnel District* at 457, 117 S.E.2d at 689 (citations omitted).

We are aware of the view that when the Commonwealth disclaims sovereign obligations on bonds it issues, it ought not be permitted to wrap itself in a sovereign immunity blanket and then, by insulating governmental functions with liability insurance, tacitly

---

[4] The Virginia Tort Claims Act, Code §§ 8.01-195.1, *et seq.,* is inapplicable here. *See Bowers* v. *Department of Highways,* 225 Va. 245, 248 n.2, 302 S.E.2d 511, 512 n.2 (1983).

acknowledge that the blanket may not exist. Under that view, the Commonwealth would be subject to suit on every claim arising out of the conduct of a "special account" project, no matter how vital the governmental function. But to adopt this view, we would have to infer what the General Assembly has not expressed, and we decline to do so.

We hold that the assignment of error is not well taken, and we will affirm the judgment.

*Affirmed.*

COCHRAN, J., dissenting.

I dissent from this latest demonstration of inconsistency in dealing with the question of sovereign immunity. The majority rejects the challenge to sovereign immunity in this case on the ground that to do otherwise would make "an immunity-liability patchwork" of the state highway system. I suggest, however, that the Court's inconsistent decisions, to which the present opinion is a significant addition, have already made "an immunity-liability patchwork" of the tort law of Virginia. Why should the highway system be excluded from an otherwise all-encompassing maze of confusion?

In my view, the theory of sovereign immunity, based upon the medieval notion that the king could do no wrong, is an anachronism in a twentieth century democratic society. The Virginia Tort Claims Act, Code §§ 8.01-195.1 to -195.8 (Acts 1981, c. 449), has recently provided a waiver of immunity in a limited class of cases. Except as therein provided, however, the absolute immunity of the Commonwealth from liability for the negligence of its officers and employees continues. *See James* v. *Jane,* 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980).

Assuming, *arguendo,* that the Norfolk-Virginia Beach Expressway is a facility operated by an immune employer, I concede that Ogden is in an analogous status to the resident engineer who was held to enjoy immunity in *Bowers* v. *Department of Highways,* 225 Va. 245, 302 S.E.2d 511 (1983). The engineer-defendant in *Bowers* was alleged to have negligently designed and installed a culvert. Ogden, the superintendent-defendant in the present case, was alleged to have negligently failed to provide barriers and

other traffic-control devices in the Norfolk-Virginia Beach Expressway.

For reasons stated in my dissenting opinion in *Bowers,* 225 Va. at 254, 302 S.E.2d at 516, I believe that *Bowers* and the majority opinion in the present case, while consistent with *Lawhorne* v. *Harlan,* 214 Va. 405, 200 S.E.2d 569 (1973), and *Banks* v. *Sellers,* 224 Va. 168, 294 S.E.2d 862 (1982), cannot be reconciled with *Crabbe* v. *School Board of Albrite,* 209 Va. 356, 164 S.E.2d 639 (1968), *Short* v. *Griffitts,* 220 Va. 53, 255 S.E.2d 479 (1979), and *James* v. *Jane,* 221 Va. 43, 282 S.E.2d 864 (1980). The negligent employee of an immune employer should be liable for his negligence, as we held in *Crabbe, Short,* and *James.* Therefore, Ogden in the present case should be answerable for his negligence even if his employer is immune.

In addition, the Norfolk-Virginia Beach Expressway is a "special account" project, financed by bonds issued by the Commonwealth payable from tolls and expressly not constituting obligations for which the full faith and credit of the Commonwealth are pledged. *See* Code §§ 33.1-267, *et seq.* The Commonwealth has thus been careful to disclaim liability for bonds issued in connection with "special account" projects such as this one. By doing so, the Commonwealth has been able to avoid the problems that would arise from financing important activities with general obligation bonds of the state. This prudent course of the Commonwealth is commendable. Nevertheless, in disclaiming responsibility for the present project, the Commonwealth should be held to have waived its right to claim immunity from tort liability. Therefore, I would overrule *Elizabeth River Tunnel District* v. *Beecher,* 202 Va. 452, 117 S.E.2d 685 (1961), in holding that the operator of a special project in performing an essential governmental function is immune from tort liability.

STEPHENSON, J., joins in dissent.