## Richmond

JAMES B. KENLEY, ETC.

v.

NEWPORT NEWS GENERAL & NON-SECTARIAN HOSPITAL
ASSOCIATION, INC.

Record No. 810628.

March 9, 1984.

Present: All the Justices.

*Robert T. Adams, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on briefs), for appellant.
*Phillips M. Dowding* for appellee.

COCHRAN, J., delivered the opinion of the Court.

Newport News General & Non-Sectarian Hospital Association, Inc. (owner and operator of Riverside Hospital and herein referred to as the Hospital or Riverside), filed in the trial court a motion for declaratory judgment against James B. Kenley, M.D., State Health Commissioner. The Hospital sought a declaration that it did not have to obtain a certificate of public need under Code §§ 32.1-93 to -102[1] to operate a program of open heart surgery.

The Commissioner filed a demurrer on the ground that the Hospital had not alleged compliance with either the Administrative Process Act (APA), Code §§ 9-6.14:1 to :20, or Part Two A of the Rules relating to timely appeals. After overruling the demurrer, the trial court conducted an *ore tenus* hearing on the merits and, at the conclusion of the hearing, ruled orally in favor of the Hospital. By final order entered January 26, 1981, the court declared, over the Commissioner's objection, that the Hospital was not required to comply with Code §§ 32.1-93 to -102, or any rules or regulations of the State Board of Health, as a condition prece-

---

[1] Repealed by Acts 1982, c. 388, and reenacted with amendments as Code §§ 32.1-102.1, -102.11.

dent to the maintenance and operation of a "complete open heart surgery program" at its facility. On appeal, the Commissioner contends that the trial court erred in overruling his demurrer and in ruling in favor of the Hospital on the merits.

This controversy is the outgrowth of correspondence originating with a letter to Riverside Hospital dated November 3, 1977, from P. M. Boynton, Executive Director of Eastern Virginia Health Systems Agency, Inc. (EVHSA).[2] In his letter Boynton noted the small number of open heart surgery operations performed at Riverside in 1976, suggested a reevaluation of the need for the program, and requested pertinent information. By letter of November 7, 1977, Riverside reported that it had discontinued its program of open heart surgery in September 1976, because of lack of anesthesia "coverage," but that it had recently employed an anesthesiologist and therefore was reactivating the program. Boynton replied that under applicable Federal regulations, services not offered within the preceding twelve months were classified as "new institutional services" for which a certificate of public need would probably be required. Boynton sent a copy of this letter to the Commissioner requesting his "advice."

By letter dated December 27, 1977, the Commissioner advised Boynton as follows:

> This is in reference to your letter of November 14 and your followup letter of November 30 relative to re-instituting the open heart surgery service at Riverside Hospital. Based upon the advice provided by our legal counsel, who has researched this matter, it has been determined that if any services [sic] not provided by a hospital during its previous 12 months of operation is re-instituted, it is considered to be a new service and as such will require a Certificate of Public Need prior to implementation.[3]

---

[2] Under Code §§ 32.1-93 to -102, a health systems agency, as defined in § 32.1-93, makes recommendations to the Commissioner before he determines whether to issue a certificate of public need for a new medical program.

[3] The definition of "New Services" to include those not provided within the preceding twelve months was a part of revised rules and regulations promulgated by the Commissioner and the State Board of Health on December 1, 1977, but with an effective date of January 2, 1978.

I hope this clarifies the matter. By copy of this letter I am informing Mr. St. Clair, Administrator of Riverside Hospital, of this finding.

On April 17, 1978, a Riverside representative wrote to Boynton that Riverside was in error when it previously reported that it had discontinued its program of open heart surgery. In response to a request from Boynton, Riverside furnished additional information about its program, but EVHSA adhered to its position that a certificate of public need was required. There was a difference of opinion as to the correct definition of "open heart surgery," Riverside contending that such surgery required the mere availability of a heart-lung bypass pump, EVHSA believing that the pump must actually be used during the operation.

Following this correspondence with Boynton, Riverside representatives met with the Commissioner, presented information about their program, and by letter dated October 16, 1978, asked him to reconsider the position he had taken in his letter of December 27, 1977. By letter to Riverside dated November 21, 1978, the Commissioner noted that during the calendar year 1977 and the year 1978 to date Riverside had a limited cardiac surgery program consisting of pacemaker insertions, pulse generator changes, insertion of a vena cava umbrella, and pericardiectomies, but did not perform open heart surgery. Reciting the definition of a new service as one not offered during the preceding twelve months, the Commissioner continued as follows:

> From this definition and the data provided, I conclude that:
> Riverside Hospital can continue to operate a cardiac surgery program for non-open heart procedures.
> Riverside Hospital must obtain a Certificate of Need prior to performing open heart surgery procedures.

Riverside then applied for a certificate of public need. When the application was denied, Riverside appealed, but before completing the appellate process, it initiated this declaratory judgment proceeding.[4] At trial, a surgeon on the staff at Riverside testified that he defined "open heart surgery" as "cardiac surgical procedures with pump assist or pump standby." He said that six peri-

---

[4] The record indicates that the appeal is being held in abeyance pending disposition of this proceeding.

cardiectomies were performed at Riverside between September, 1976, and November, 1977; although the pump was not used during any of these operations, it was available on a standby basis. No such operations with the pump available had been performed since November 11, 1977, the date the pump technician, known as the "perfusionist," left Riverside's employment. The 1979 State Medical Facilities Plan of the State Board of Health, introduced as an exhibit by the Commissioner, defined open heart surgery procedures as "procedures which use a heart-lung by-pass machine to perform the functions of circulation during surgery. (Citation omitted)."

We must first determine whether the Commissioner's letters of December 27, 1977, and November 21, 1978, were "case decisions" under the APA. Code § 9-6.14:4(D) provides the following definition:

> "*Case*" or "*case decision*" means any agency proceeding or determination that, under laws or regulations at the time, a named party as a matter of past or present fact, or of threatened or contemplated private action, either is, is not, or may or may not be (i) in violation of such law or regulation or (ii) in compliance with any existing requirement for obtaining or retaining a license or other right or benefit.

The Reviser's Notes to this statute state that the "heart" of a case decision "is a fact determination respecting compliance with law." For example, case decisions are those decisions "of a declaratory nature issued in advance of contemplated private activities" or those "forbidding named parties from acting . . . or threatening to act in some way . . . forbidden by the basic laws, the regulations, or other applicable law under which the agency is operating." Code § 9-6.14:4, Reviser's Notes D.

In *Va. ABC Comm.* v. *York St. Inn*, 220 Va. 310, 257 S.E.2d 851 (1979), the Alcoholic Beverage Control Commission denied a request to serve alcoholic beverages in a restaurant on a counter containing imbedded backgammon boards. After an informal conference with representatives of the applicant, the Commission again denied the request. We held that the Commission's refusal to permit the applicant to use the counter was a case decision under the APA. *Id.* at 312-13, 257 S.E.2d at 853.

In *Commonwealth* v. *County Utilities*, 223 Va. 534, 290 S.E.2d 867 (1982), the State Water Control Board issued permits to two privately owned utilities. The original permit of one of the utilities was less restrictive than that of the other utility, but the Board subsequently modified the permits to require both utilities to stand upon an equal basis. We held that the Board's actions were case decisions as defined by the APA. *Id.* at 541, 290 S.E.2d at 871. Moreover, in *State Bd. of Health* v. *Godfrey*, 223 Va. 423, 290 S.E.2d 875 (1982), we held that the denial of a permit for a septic system after a formal hearing and an informal rejection of the post hearing applications were case decisions under Code § 9-6.14:4(D). *Id.* at 433, 290 S.E.2d at 880.

■ The language of the Commissioner's letter of December 27, 1977, was no more than a general statement of position regarding certificates of public need. The letter was not addressed to Riverside but to EVHSA, with a copy to Riverside. It merely stated that any hospital service that is reactivated after an absence of twelve months is considered to be a new service. There was neither an application of law to Riverside's program of open heart surgery nor any finding of facts as to the kind of program Riverside was providing. We hold that this letter was not a case decision under the APA.

■ We hold that the letter of November 21, 1978, however, was a case decision. Before the Commissioner wrote this letter, representatives of Riverside met with him and submitted extensive and detailed data about the Hospital's program of open heart surgery. The letter was addressed to Riverside, it focused on the Hospital's program, and it applied the rules and regulations to the facts. The Commissioner found that throughout 1977 and 1978 until November 21, the date of the letter, Riverside's cardiac surgery program consisted of specified procedures which did not constitute open heart surgery. The Commissioner then made administrative rulings based on these findings. He ruled that Riverside could continue to operate its cardiac surgery program as before, performing what he had found were non-open heart procedures. He further ruled that Riverside must obtain a certificate of public need before performing open heart surgery. The letter came within the definition of a case decision under Code § 9-6.14:4(D).

■ Having determined that the Commissioner's letter of November 21, 1978, was a case decision, we examine the procedure

followed by Riverside to obtain court review of the decision. Code § 9-6.14:16 provides in pertinent part as follows:

> **§ 9-6.14:16. Right, forms, venue.** — Any person affected by and claiming the unlawfulness of any regulation, or party aggrieved by and claiming unlawfulness of a case decision, as the same are defined in § 9-16.14:4 of this chapter . . . shall have a right to the direct review thereof either (i) by proceeding pursuant to express provisions therefor in the basic law under which the agency acted or (ii), in the absence, inapplicability, or inadequacy of such special statutory form of court review proceeding, by an appropriate and timely court action against the agency as such or its officers or agents in the manner provided by the rules of the Supreme Court of Virginia. Such proceedings include those for declaratory judgments. . . .

The basic law under which the Commissioner acted was Title 32.1-1, Code §§ 32.1-2, *et seq.* Code §§ 32.1-96 to -98 provide for the filing of applications for certificates of public need, proceedings thereon before hearing examiners, and appeals from adverse determinations by hearing examiners. There is no express provision, however, for appeals from decisions of the Commissioner that certificates of public need are required. This case differs, therefore, from *Commonwealth* v. *County Utilities*, 223 Va. 534, 290 S.E.2d 867 (1982), and *Forbes* v. *Kenley*, 227 Va. 56, 314 S.E.2d 49 (1984). In those cases, there were express statutory provisions for appeal in the basic law, and under Code § 9-6.14:16(i) those provisions were available to the aggrieved parties. In the present case, there is no express statutory provision in the basic law for appeal of the case decision. Therefore, in the absence "of such special statutory form of court review proceeding," a person aggrieved by a case decision is required to follow the appeal procedure of Code § 9-6.14:16(ii) by resorting to "an appropriate and timely court action . . . in the manner provided by the rules of the Supreme Court of Virginia." Under Rule 2A:2 notice of a direct appeal must be given to the administrative agency within thirty days after entry of the final order in the case decision.

Riverside contends that Part Two A of the Rules applies only to direct appeals and not to motions for declaratory judgment filed pursuant to Code §§ 8.01-184 to -191. We note, however,

that in this case the declaratory judgment procedure is being used to accomplish the purpose of a direct appeal of a pending case. As the Commissioner points out, if the declaratory judgment alternative were available without the time constraints of Part Two A of the Rules, litigants could render Code § 9-6.14:16 ineffectual and meaningless. Nevertheless, we will assume, without deciding, that, in enacting the statute in imprecise language, the General Assembly intentionally or unintentionally achieved this result, and that the trial court, therefore, did not err in overruling the Commissioner's demurrer.

█ Reaching the merits of the case, we hold that Riverside cannot prevail. The trial court apparently made a finding of fact that Riverside was performing open heart surgery when it had a heart-lung bypass pump available on a standby basis. There was conflicting evidence from which this finding could be made before the effective date of the 1979 State Medical Facilities Plan establishing the more restrictive definition of "open heart surgery" as "procedures which use a heart-lung bypass machine to perform the functions of circulation during surgery. (Citation omitted)." The twelve-months rule for determining new services was effective, however, when the Commissioner issued the case decision on November 21, 1978. Riverside's evidence showed that no open heart surgery was performed after November 11, 1977, even under the less restrictive definition for which Riverside argued. There was no perfusionist employed by Riverside after that date; consequently, there was no heart-lung bypass pump available for use during surgery. The Commissioner in effect found from uncontradicted evidence that Riverside was performing non-open heart cardiac surgery procedures without the use or availability of such a pump.

█ Having discontinued the program of open heart surgery under its own definition for more than twelve months before the case decision of November 21, 1978, Riverside was properly required by the Commissioner to apply for and obtain a certificate of public need before offering a program of open heart surgery under the definition then in effect. Holding, therefore, that the trial court erred in ruling to the contrary, we will reverse the final order and enter judgment here in favor of the Commissioner consistent with this opinion.

*Reversed and final judgment.*