**Alexandria**

VIRGINIA BOARD OF MEDICINE, et al.

v.

VIRGINIA PHYSICAL THERAPY ASSOCIATION, et al.

No. 1421-90-4

Decided December 24, 1991

COUNSEL

Lynne R. Fleming, Assistant Attorney General (Mary Sue Terry, Attorney General; Jessica S. Jones, Senior Assistant Attorney General; Howard M. Casway, Assistant Attorney General, on briefs), for appellants.

Gregory M. Luce (Kathleen D. Kauffman; Fulbright & Jaworski, on brief), for appellees.

OPINION

**KOONTZ, C.J.**—Pursuant to a verified complaint and motion for declaratory judgment and injunctive relief filed by the Virginia Physical Therapy Association (VPTA) and Martin Boytek, Jr.[1] against the Virginia Board of Medicine (Board), the circuit court declared that (1) the Board developed and enforced a rule prohibiting physical therapists from performing electromyographic examinations (EMG); (2) the rule was contrary to the statutes governing the practice of physical therapy; and (3) the rule was not promulgated in accordance with the Virginia Administrative Process Act (VAPA) and the Virginia Register Act. Accordingly, the court permanently enjoined the Board from enforcing any rule prohibiting the performance of electromyographic examinations by physical therapists. The court, however, denied the VPTA's request for an award of attorney fees. On appeal, the Board and the VPTA raise numerous issues. We find the issues of whether the circuit court had subject matter jurisdiction to hear the case and whether it erred by denying the VPTA's request for attorney fees to be dispositive; accordingly, we limit our decision to those issues.

The facts upon which this appeal arose are not in dispute. Pursuant to Code §§ 54.1-2900 *et seq.*, the Board is the agency empowered to regulate the practice of medicine and other healing arts, including physical therapy, in the Commonwealth of Virginia. The VPTA is a non-profit corporation that acts as a voluntary trade association whose membership consists of physical therapists licensed to practice physical therapy in the Commonwealth. Martin Boytek is a member of the VPTA.

---

[1] Hereinafter, the VPTA and Boytek will be referred to jointly as VPTA except as otherwise required.

The dispute between the parties involves the scope of the licensure of physical therapists to conduct electromyographic tests. Since the 1950s, prior to the licensure of physical therapists in the Commonwealth, physical therapists have been conducting electromyographic tests upon patients referred to them by physicians. These tests are used to measure the electric activity produced by muscles and consist of two parts: (1) nerve conduction studies which involve the use of external electrodes on a patient's skin over a muscle; and (2) needle electrode examinations (EMG) which involve the insertion of a needle electrode into a patient's muscle. The specific focal point of the parties' disagreement concerns the second part of this test: whether the performance of the needle electrode examination (EMG) comes within the authorized scope of the practice of physical therapy or, rather, is limited to the practice of medicine.

In a resolution dated February 5, 1983, the Virginia Neurological Society, whose membership consists of physicians, announced its position that EMG testing constitutes the practice of medicine and should be performed and interpreted only by physicians who are qualified by virture of training and experience in electromyography. This resolution was sent to the Board, which formed a committee to address this issue. Relying upon material submitted by this committee, the Attorney General issued letter opinions on November 8, 1984 and May 14, 1985, addressing the issue. The November 1984 opinion concluded that electromyography is the practice of medicine and may only be performed by a physician. The May 1985 opinion clarified the prior opinion by explaining that physical therapists could conduct the external electrode portion of the test at the direction of a physician, but that the invasive needle electrode portion of the test (the EMG) constituted the practice of medicine and may be performed only by a physician. Subsequently, in November 1987, the Board published a summary of the Attorney General's May 1985 opinion in its newsletter. The summary did not state that the Board adopted or endorsed the Attorney General's opinion.[2]

---

[2] In October 1987, however, Blue Cross/Blue Shield notified Boytek that approximately two years earlier the Board had advised it that non-physician supervised EMGs were beyond the scope of licensure for physical therapists. Therefore, Blue Cross/Blue Shield refused to reimburse Boytek and other physical therapists for EMGs they performed, since its contract did not allow for reimbursement of services outside the provider's

On July 19, 1988, the Board gave notice to Boytek to appear at an informal conference to be held on August 24, 1988, to inquire into allegations that he had violated laws governing the practice of medicine by performing the needle electrode portion of the electromyography examination in conjunction with his private practice of physical therapy. This conference was later rescheduled for October 29, 1989. Because of the events that followed, this conference was never held.

Following the notice for this informal conference, in November 1988, the VPTA petitioned the Board, pursuant to the Board's guidelines, to promulgate an appropriate rule or regulation, under the VAPA, Code § 9-6.14:1 *et seq.*, before prohibiting physical therapists from performing EMGs. At the hearing held by the Board on this petition, the VPTA argued that the Board's enforcement of the Attorney General's opinion regarding EMGs would amount to an illegal rule. While acknowledging that the Board had previously held public hearings concerning the regulation of EMGs, the VPTA contended the Board failed properly to adopt its rule regarding these tests. At the conclusion of the hearing, the Board denied the VPTA's request that the Board hold hearings and follow the rule-making process provided in the VAPA to promulgate a proper rule or regulation, stating that "it is not well founded in Virginia law by the facts presented."[3]

Finally, in response to a May 15, 1989 request from a member of the General Assembly on behalf of the VPTA, the Attorney General issued an updated opinion on June 15, 1989, reaffirming the previous Attorney General opinions and concluding that the EMG requires diagnosis by a physician and may not be performed by a physical therapist.

Prior to Boytek's October 29, 1989 informal conference, the VPTA filed its motion for declaratory judgment and injunctive relief in the circuit court to prevent the Board from enforcing its position regarding EMGs. In this proceeding, the VPTA asserted that the Board had failed to promulgate the alleged rule in accordance with the VAPA and that the rule was contrary to the Code.

---

licensure. Notably, the insurance company acknowledged that the Board apparently never made an official notification to physical therapists of the Board's position on EMGs.

[3] Hereinafter, for purposes of this opinion, we will make no distinction between a rule and a regulation and use only the term "rule."

On October 17, 1989, the court granted the VPTA a temporary injunction preventing the Board from enforcing any prohibition against the performance of EMGs by physical therapists without the prior adoption of such a rule in accordance with the VAPA and the Board's guidelines. Thereafter, the VPTA filed a motion for summary judgment based on the grounds set forth in its motion for declaratory judgment. In response, the Board filed a motion for summary judgment, asserting that the circuit court was without jurisdiction over the matter because the VPTA had failed to comply with the requirements of Part 2A of the Rules of the Supreme Court and was further barred from pursuing the action by the doctrine of sovereign immunity. In the alternative, the Board asserted that no rule existed because neither the Attorney General's opinion nor the publication of a summary of that opinion in the Board's newsletter constituted rule-making within the meaning of the VAPA. After hearing oral argument on these motions, the court denied the Board's motion for summary judgment, and granted the VPTA's motion for summary judgment and permanent injunctive relief. This appeal by the Board followed.

On appeal, with regard to the issue of the circuit court's jurisdiction, the Board, in summary, argues: (1) that the court's exercise of jurisdiction is contrary to Code § 9-6.14:16 and Rule 2A:2 because, assuming that a rule concerning the performance of the EMG test by physical therapists was adopted, the thirty day appeal period expired before the motion for declaratory judgment was filed in the circuit court; and (2) rules of the agency may not be challenged by an independent declaratory judgment proceeding because of the doctrine of sovereign immunity.

In response, the VPTA, in summary, argues: (1) that while Code § 9-6.14:16(A) affords the VPTA the right to judicial review of the Board's unlawful rule, because the Board only sought to enforce but never "adopted" the unlawful rule, Part 2A of the rules cannot apply since Rule 2A:1(c) states that "[t]hese rules shall apply to the review of, by way of direct appeal from, the adoption of a [rule];" and (2) that the thirty day appeal period provided in Rule 2A:2 must be inapplicable because it is only triggered by the "adoption" of a rule. Thus, because Part 2A of the rules cannot apply, the circuit court had jurisdiction pursuant to Code § 8.01-184, which grants circuit courts the power to issue declaratory judgments in cases of actual controversy which are

not precluded by Code § 9-6.14:16(A).

The dilemma created by these circular arguments is readily apparent. The VPTA contends the Board created an unlawful rule and that Code § 9.6-14:16(A) provides it the right to challenge the unlawfulness of that rule by an "appropriate" court action. The VPTA concedes, however, that the alleged unlawful rule was not "adopted." Based on that concession, the Board responds that without some action of adoption on its part, no rule, as defined in the VAPA, was created and, therefore, no rule exists over which the court may exercise jurisdiction. In the alternative, the Board contends that, assuming it promulgated an improper rule, there must have been an "adoption" and the thirty day appeal period has expired.

 We begin our inquiry into the circuit court's jurisdiction over this case by addressing the relationship between judicial review of the Board's actions and the doctrine of sovereign immunity. First, we note that the Virginia Supreme Court has recently declared "the doctrine of sovereign immunity is 'alive and well' in Virginia." *Wiecking v. Allied Medical Supply Corp.*, 239 Va. 548, 551, 391 S.E.2d 258, 260 (1990) (quoting *Messina v. Burden*, 228 Va. 301, 307, 321 S.E.2d 657, 660 (1984)). "The doctrine of sovereign immunity from suit . . . is . . . often explained as a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities." *Hinchey v. Ogden*, 226 Va. 234, 240, 307 S.E.2d 891, 894 (1983) (quoting 72 Am. Jur. 2d *States, Territories, and Dependencies* § 99 (1974)). Most importantly, the doctrine of sovereign immunity provides for "smooth operation of government" and prevents "citizens from improperly influencing the conduct of governmental affairs through the threat or use of vexatious litigation." *Messina*, 228 Va. at 308, 321 S.E.2d at 660; *accord Lentz v. Morris*, 236 Va. 78, 81, 372 S.E.2d 608, 610 (1988). As a general rule, "the sovereign is immune not only from actions at law for damages but also from suits in equity to restrain the government from acting or to compel it to act." *Hinchey*, 226 Va. at 239, 307 S.E.2d at 894. As an agency of the Commonwealth, the Board enjoys the privileges of sovereign immunity. *Cf. Messina*, 228 Va. 301, 321 S.E.2d 657.

▇ While the Commonwealth and its agencies are generally immune from suits, the Commonwealth may waive its sovereign immunity. However, in Virginia, "[w]e have consistently held that waiver of immunity cannot be implied from general statutory language or by implication. Statutory language granting consent to suit must be explicitly and expressly announced." *Elizabeth River Tunnel Dist. v. Beecher*, 202 Va. 452, 457, 117 S.E.2d 685, 689 (1961); *accord Hinchey*, 226 Va. at 241, 307 S.E.2d at 895. The Commonwealth also may tailor its consent to be sued by prescribing certain modes, terms, and conditions. For instance, the Commonwealth may limit "the right to sue to certain specified causes, . . . and when it does so it can be sued only in the manner and upon the terms and conditions prescribed. Compliance with the conditions and restrictions set forth in the statute is jurisdictional." 72 Am. Jur. 2d *States, Territories, and Dependencies* § 124 (1974)(footnotes omitted).

▇ Except where an agency's basic law creates an action and provides its own due process or where the VAPA expressly exempts an agency or its actions,[4] the VAPA governs an agency's actions and judicial review thereof. *See School Bd. of the County of York v. Nicely*, 12 Va. App. 1051, 1058, 408 S.E.2d 545, 549 (1991). Thus, the General Assembly has chosen to waive explicitly the sovereign immunity of agencies in general, but only for certain suits brought pursuant to the VAPA, which is designed to provide for and standardize court review of agency actions. *See* Code §§ 9-6.14:3, :16. The Board's basic law does not provide for court review and it is not exempt from the VAPA; therefore, court review of the Board's actions is provided for and governed by the VAPA.

▇ The VAPA expressly provides two actions that allow agencies to be sued: (1) the adoption of rules, and (2) case decisions, as those terms are statutorily defined. Code § 9-6.14:16(A), in pertinent part, provides that:

Any person affected by and claiming the unlawfulness of any [rule], or party aggrieved by and claiming the unlawfulness

---

[4] There are certain agencies and agency actions that are exempted or excluded from the VAPA's provisions, and therefore are not necessarily beyond the privileges of sovereign immunity because of the General Assembly's adoption of the VAPA. *See* Code §§ 9-6.14:4.1 and :15.

of a case decision, as the same are defined in Code § 9-6.14:4 . . . shall have a right to the direct review thereof by an appropriate and timely court action against the agency . . . in the manner provided by the rules of the Supreme Court of Virginia . . . . In addition, where any such [rule] or case decision is the subject of an enforcement action in court, the same shall be reviewable by the court as a defense to the action . . . .

Rule 2A:1(c) provides: "These rules shall apply to the review of, by way of direct appeal from, the adoption of a [rule] or the decision of a case by an agency." Rule 2A:2 requires that a notice of appeal must be filed within thirty days after the adoption of a rule or the entry of a final order in a case decision.

■ Thus, the General Assembly has waived sovereign immunity only to allow a party to obtain judicial review of the Board's adoption of rules or the Board's case decisions, as such are defined in the VAPA, *in the manner provided in the VAPA*. In short, the Board has consented to and may be sued only for its promulgation of a rule or its decision of a case, as both are defined in the VAPA. The VPTA's right to bring a declaratory judgment action and in turn the court's jurisdiction to exercise jurisdiction over the action must be founded on the provisions of Code § 9-6.14:16(A) and fall within the explicit and limited waiver of sovereign immunity contained in that Code section.

■ Under the VAPA, "rule" and "regulation" are defined as "any statement of general application, having the force of law, affecting the rights or conduct of any person, *promulgated* by an agency in accordance with the authority conferred on it by applicable basic laws." Code § 9-6.14:4(F)(emphasis added). "Promulgate" means to publish or to announce officially, and is commonly used in the context of the "formal act of announcing a statute." *Black's Law Dictionary* 634 (5th ed. 1983). The VAPA and the Virginia Register Act provide the procedure for the promulgation and adoption of a rule or regulation. An agency's rule or regulation is invalid if the agency failed to comply with these statutes in the promulgation process. *See generally State Water Control Bd. v. Appalachian Power Co.*, 12 Va. App. 73, 402 S.E.2d 703 (1991) (en banc).

The parties agree that the Board did not formally adopt a rule in this case. The VPTA asserts, however, that it is contesting the Board's enforcement of a "rule" that it *failed to adopt* in accordance with the VAPA and the Virginia Register Act. In essence, we are being asked to determine the proper method for challenging a "de facto" rule rather than a rule "promulgated by an agency in accordance with the authority conferred upon it by applicable basic laws." The record shows that the Board gathered evidence and conducted hearings regarding the performance of EMGs by physical therapists. The Board obtained Attorney General opinions stating that EMGs constitute the practice of medicine and may be performed only by physicians; the Board then published a summary of those opinions in its newsletter. The Board also informed Blue Cross/Blue Shield that physical therapists were not licensed to perform EMGs. The Board denied the request of the VPTA that it promulgate an appropriate rule under the VAPA before prohibiting physical therapists from performing EMGs. Finally, the Board notified Boytek to appear at an informal conference to determine whether he may have violated the Code by performing EMGs. From these actions, we believe it to be clear that the Board had adopted a position or a de facto rule that the performance of EMGs constituted the practice of medicine and thus these tests could not lawfully be performed by physical therapists.[5]

We find, however, that the alleged unlawful rule of the Board is not appealable or subject to court review under the VAPA *in the procedural posture of this case*. Since the Board never "promulgated" and formally adopted a rule prohibiting the performance of EMGs by physical therapists, the alleged unlawful rule fails to meet the VAPA definition of a rule, and, therefore, a rule technically does not exist for purposes of Code § 9-6.14:16(A). In addition, the alleged unlawful rule is not the subject of an enforcement action in court but, rather, is the subject of an informal conference between the Board and Boytek. Accordingly, the VPTA may not bring an action pursuant to the provisions of Code § 9-6.14:16(A) applicable to the adoption of rules or the enforcement of such rules in an action in court.

---

[5] We need not and do not express any opinion on whether such a position is supported by the law applicable to the practice of medicine or the practice of physical therapy.

The only remaining avenue for challenging an act of the Board is by a suit challenging a case decision by the Board. A de facto rule may be challenged by bringing a suit claiming the unlawfulness of a case decision, as defined by the VAPA. Code § 9-6.14:4(D) defines "case decision" as:

> any agency proceeding or determination that, under laws or regulations at the time, a named party as a matter of past or present fact, or of threatened or contemplated private action, either is, is not, or may or may not be (i) in violation of such law or regulation or (ii) in compliance with any existing requirement for obtaining or retaining a license or other right or benefit.

See also *Kenley v. Newport News Gen. & Non-Sectarian Hosp. Ass'n.*, 227 Va. 39, 44-45, 314 S.E.2d 52, 55 (1984); *Commonwealth ex rel. State Water Control Bd. v. County Utils. Corp.*, 223 Va. 534, 541, 290 S.E.2d 867, 871 (1982).

Neither party argues there was a case decision, and, moreover, the Board's actions do not amount to one. The Board only notified Boytek that an informal conference was to be held to determine whether he may have violated the Code by performing EMGs. The informal conference was never held and the Board consequently never applied the law to Boytek's past performances of EMGs nor did it make any findings of fact regarding Boytek's practice. *Cf. Kenley*, 227 Va. at 45, 314 S.E.2d at 55. Absent a case decision as defined by the VAPA, the VPTA could not and cannot bring a suit against the Board to challenge the alleged unlawful de facto rule or position of the Board with regard to the performance of EMGs.

▮ The Supreme Court's decision in *Kenley*, in our view, is consistent with this result. In construing Code § 9-6.14:16 as it provided at that time, the Court concluded that a motion for declaratory judgment used to accomplish the purpose of a direct appeal of a pending case was an available procedure for that purpose without the time constraints of Part 2A of the Rules. Subsequent to the decision in *Kenley*, Code § 9-6.14:16 was revised by the General Assembly and no longer contains the "imprecise language" noted by the Court. In its present form, Code § 9-6.14:16 clearly provides that the procedural steps for obtaining court review of agency actions adopting a rule or rendering a case decision

are the procedural steps provided by the Rules of the Supreme Court. In addition, this Code section now provides that where a rule or case decision is the subject of an enforcement *action in court*, the lawfulness of a rule or case decision may be reviewed by a court as a defense to such action. In summary, Code § 9-6.14:16, where applicable to a particular agency, requires that appeals from that agency's adoption of a rule or case decision be filed within the time constraints of Rule 2A:2. The exception to these time constraints is where an agency's action is reviewed by a court as a defense to an enforcement action by the agency in a court action.

In reaching our decision, we recognize that parties who are affected by "de facto" rules prior to a case decision are without complete relief until such rules are determined upon court review to be unlawful. For example, here, as a result of the Board's notification to a medical insurer of its position or de facto rule on the performance of EMGs by physical therapists, physical therapists could be denied reimbursement for services rendered and would be without any means to challenge the Board's position if the Board does not choose to enforce directly its position or de facto rule. Whether by design or oversight, Virginia law contains a gap that prevents direct appeals of "de facto" rules by affected parties. That, however, is a matter for the General Assembly to address, if it so desires.

Finally, the VPTA argues that the court should have awarded it attorney fees due to the Board's unreasonable actions. Because we have found the circuit court lacked jurisdiction to hear the case, it also lacked jurisdiction to award the requested attorney fees. Accordingly, the court's refusal to award attorney fees to the VPTA was not error.

For these reasons, we reverse the circuit court's decision and dismiss the case without prejudice to VPTA or Boytek to file a new action against the Board should the Board reach a case decision in Boytek's case.

*Reversed and dismissed.*

Baker, J., and Duff, J., concurred.