## CIRCUIT COURT OF THE CITY OF SALEM

Southwest Virginia Health
Systems Agency, Inc.

v.

James B. Kenley et al.

Case No. (Chancery) 3505

Lewis-Gale Hospital, Inc.

v.

James B. Kenley et al.

Case No. (Chancery) 3523

Roanoke Memorial Hospitals

v.

James B. Kenley et al.

Case No. (Chancery) 3526

By JUDGE THOMAS H. WOOD

September 6, 1985

There are presently three appeals-chancery suits pending before the Court, all arising from a decision by the State Health Commissioner rendered on January 22, 1985, granting a Certificate of Need [CON] to Lewis-Gale Hospital, Inc. Lewis-Gale filed its application with the State Health Commissioner on June 15, 1984. A public hearing on the application was conducted by the Southwest Virginia Health Systems Agency on August 23, 1984. On December 3, 1984, an informal, fact-finding conference was convened. This conference was continued to and concluded on December 14, 1984. As previously stated, the Commissioner rendered his decision on January 22, 1985.

All parties participating in the informal, fact-finding conference have filed appeals. There are pending in these three appeals a number of Motions which are now ready for a decision. In order to avoid confusion, I will list each case separately.

No. 1 - *Southwest Virginia Health Systems Agency, Inc. v. James B. Kenley, M.D., et al. - Chancery No. 3505*

The State Health Commissioner's decision on the Lewis-Gale CON application was handed down on January 22, 1985. On February 21, 1985, the Health Systems Agency filed its Notice of Appeal in the Circuit Court of the City of Salem and mailed a copy of the Notice of Appeal to the Agency and the other parties participating in the informal, fact-finding conference. On March 25, 1985, the Health Systems Agency filed its Petition for Appeal. Subsequently, Lewis-Gale filed a Motion to Dismiss and the Commissioner filed a Demurrer, both challenging the timeliness of the Agency's filing. Rule 2A:2 of the Rules of Court requires that the Notice of Appeal be filed *with the Agency* within 30 days of the date of the case decision. Rule 2A:4 requires the Petition for Appeal to be filed in the Circuit Court within 30 days of the filing of the Notice of Appeal. Thus, it appears that the Petition for Appeal was timely filed, but the Notice of Appeal clearly was not. All of the authorities submitted to me have held that the requirements of Rule 2A:2 are mandatory, and that the failure to comply with the time

requirements of that Rule is fatal to the appeal. Accordingly, it is my opinion that the appeal of the Health Systems Agency in Chancery Case No. 3505 ought to be dismissed. The issue remaining in this appeal, whether Roanoke Memorial showed "good cause," is discussed hereinafter.

No. 2 - *Lewis-Gale Hospital, Inc. v. James B. Kenley, M.D., et al. - Chancery No. 3523*

In a timely fashion, Lewis-Gale filed its Notice of Appeal and Petition for Appeal challenging the ruling of the Commissioner allowing Roanoke Memorial to participate, as a party, in the CON application case decision. In its Petition for Appeal, Lewis-Gale alleges that the ruling by the Commissioner was a "case decision" as defined in Section 9-6.14:14(D) of the Code of Virginia, as amended, and that Lewis-Gale was a "party aggrieved" and entitled to review by virtue of Code Section 9-6.14:16. Roanoke Memorial filed a Demurrer to this Petition for Appeal alleging that Lewis-Gale is not a "party aggrieved," that the decision of the Commissioner ruling that Roanoke Memorial had showed "good cause" was excluded from review by Code Section 9-6.14:15, that Lewis-Gale is estopped to appeal this ruling because it accepted a favorable decision on the Certificate of Public Need, that the ruling as to "good cause" is not a case decision and that, having participated in the informal, fact-finding conference, Roanoke Memorial is a party by virtue of Rule 2A:1(b) of the Rules of the Supreme Court. The Health Systems Agency filed a Demurrer to Lewis-Gale's Petition for Appeal on the same grounds as Roanoke Memorial and in addition filed a Cross-Bill against Lewis-Gale and the Commissioner attacking the validity of the decision of the Commissioner approving the CON application of Lewis-Gale. The Commissioner filed an answer to the Petition in which it admits that Lewis-Gale is entitled to review but denies that the decision should be reversed. In addition, the Commissioner filed a Demurrer to the Cross-Bill of the Health Systems Agency on the basic grounds that the Cross-Bill bears no relationship to the case decision being appealed by Lewis-Gale. Lewis-Gale has filed two Motions in response to the Cross Bill, both on essentially the same grounds as the Commissioner's Demurrer.

Insofar as is relevant to this case, Code Section 9-6.14:4(D) defines "case decision" as:

> Any agency proceeding or determination that, under laws or regulations at the time, a named party as a matter of past or present fact. . . either is, is not, or may or may not be. . . (ii) in compliance with any existing requirement for obtaining or retaining a. . . right or benefit.

The issue of Roanoke Memorial's participation in the CON application case was the subject of separate Memoranda by the parties and was very clearly hotly contested. Undoubtedly, the Commissioner's decision conferred a right or benefit upon Roanoke Memorial. This decision was based upon separate findings of fact and conclusions of law, all of which are necessarily required by the "basic law," Code Section 32.1-102.6(E). After reviewing the evidence, Code Section 9-6.14:1(D), and the cases of *Kenley* v. *Newport News Hosp. Assoc.*, 227 Va. 39, 314 S.E.2d 52 (1984), and *State Board of Health* v. *Godfrey*, 223 Va. 423, 290 S.E.2d 875 (1982), Supreme Court decisions construing, Code Section 9-6.14:1(D), it is my opinion that the Commissioner's decision conferring party status on Roanoke Memorial was a "case decision," which is subject to review.

As a result of this ruling, Lewis-Gale has been compelled to resist the vigorous opposition of Roanoke Memorial, the only party other than Lewis-Gale with a financial interest in the CON application decision. There is, in my mind, no doubt that Lewis-Gale is a "party aggrieved" by this decision.

It is further my opinion that the "basic law," Code Section 32.1-102.6(E), and not Rule 2A or the Administrative Process Act, controls the issue of who is or who is not a party to a CON application proceeding. Rule 2A and the Administrative Process Act are general in application and are to be utilized in the absence of appropriate provisions in the basic law. Code Section 9-6.14:3, Code Section 9-6.14:16 and *Commonwealth ex rel. State Water Control Board* v. *County Util. Corp.*, 223 Va. 534, 290 S.E.2d 867 (1982).

If the Commissioner's decision to grant party status to Roanoke Memorial is a case decision, clearly Lewis-Gale,

by accepting the benefit of a favorable decision on its CON application, would not be estopped from appealing the "good cause" case decision nor would this decision be exempted from review by Code Section 9-6.14:15.

Accordingly, it is my opinion that the Demurrers filed by Roanoke Memorial and the Health Systems Agency should be overruled.

As stated above, it is my view that the "good cause" ruling by the Commissioner was a separate case decision. The Cross Bill filed by the Health Systems Agency attacks the validity of the Commissioner's decision on Lewis-Gale's CON application. That question is not before the Court in this case. Accordingly, it is my opinion that the Cross Bill ought to be dismissed.

**No. 3 - *Roanoke Memorial Hospitals v. James B. Kenley, M.D. et al. - Chancery No. 3526***

This suit was instituted by Roanoke Memorial by the timely filing of a Notice of Appeal and Bill of Complaint in the nature of a Petition for Appeal. Lewis-Gale responded with a Motion to Dismiss, based upon the "good cause" issue, and an Answer in which it claims that the Commissioner's decision to grant the Certificate of Need was correct. The Health Systems Agency has filed an Answer in which it admits the allegations of Roanoke Memorial and requests that the Commissioner's decision be reversed and the Commissioner has taken the position that his decisions on the CON application and "good cause" issue were correct.

At the outset, it should be noted that the CON application proceeding was short-circuited by the holding of Judge Wright in the case of *State Board of Health, et al.* v. *Virginia Hospital Association.* This decision prevented this matter from ever reaching the formal stage. However, no party has requested the opportunity to put on additional evidence, and, in view of the Supreme Court's holding in the case of *State Board of Health* v. *Godfrey,* 223 Va. 423, 290 S.E.2d 875 (1982), the standard for review as to issues of fact is the same as if the matter had proceeded through the formal stage. Code Section 9-6.14:17 clearly sets forth the standard for review. Under this standard, a Court may substitute its judgment for the Agency's, "only if, considering the record as a whole, a reasonable mind would necessarily come to a different

conclusion." *Virginia Real Estate Commission* v. *Bias*, 226 Va. 264, 308 S.E.2d 123 (1983).

The primary issue involved in this case at this stage of the proceeding is whether the Commissioner's decision that Roanoke Memorial had showed "good cause" as defined in Code Section 32.1-102.6(E), and thus, was entitled to participate in this case, is supported by substantial evidence. This very same issue is presented in the appeal of *Lewis-Gale Hospital, Inc.* v. *James B. Kenley, M.D.* - Chancery No. 3523. Code Section 9-6.14:17 places upon the party complaining of Agency action the burden to demonstrate an error of law, the meaning of which is further defined in that Section.

Roanoke Memorial is a health care provider in the immediate area of Lewis-Gale. Both compete in approximately the same primary care area. As a competitor, Roanoke Memorial is undoubtedly an interested party which would be affected by the decision in this case. Because of its status, the regulations adopted by the Board of Health require, and the statute does not prohibit, that the Health Systems Agency reviewing the application notify it by mail of the fact that the application is being reviewed, the scheduled date for the public hearing and the date the Agency will make its final recommendation. In addition, the regulations expressly provide the opportunity to such a "person" to directly submit "written opinions, data and other information" to the Agency and to the Commissioner at any time prior to the final decision. Regulations, Sections 7.00 *et seq.* However, Section 32.1-102.6(E) very clearly does not authorize a competitor *per se* to participate in the case once it has proceeded to the stage where it is controlled by the Administrative Process Act. In this regard, the statute is not consistent with Federal regulations which have been adopted to govern CON proceedings in states which have not adopted their own procedure. These regulations permit "affected persons" to participate and define that term to include competing health care providers. Both the Commissioner and Roanoke Memorial take the position that Section 32.1-102.6(E) should be construed so as to be consistent with the Federal regulations and cite the case of *Lander Valley Regional Medical Center* v. *Wyoming CON Review Board*, 689 P.2d 108 (Wyo. 1984), in support of their position. The *Lander* case is not directly on point, since the Wyoming statute defined party in general terms and did not include or

exclude a competitor. The regulations adopted by the Wyoming Certificate of Need Review Board did permit an "aggrieved or adversely affected" party to participate. In view of the impreciseness of the Wyoming statute, the Wyoming Court could and did hold that the statute should be construed consistently with the Federal regulations. Lewis-Gale cites the case of *St. Joseph's Hill Infirmary, Inc.* v. *Mandl*, 682 S.W.2d 81 (Mo. App. 1984), for the proposition that the Federal regulations are not mandatory and are not binding upon those states which have adopted their own CON procedure. In my view, the Virginia statute allows no room for construction. Considering the amendments to Section 32.1-102.6(E) which have been made recently by the General Assembly and the amendments which the General Assembly has refused to adopt, its intent is, to me, clear. Accordingly, I have no authority to construe this Section to include any additional parties other than those specified, "affected" or otherwise.

Section 32.1-102.6(E) does permit the participation of an additional party if it can establish "good cause." A party can show good cause if it can demonstrate that:

> (1) there is significant, relevant information not previously presented at and not available at the time of the public hearing, (2), there have been significant changes in factors or circumstances relating to the application subsequent to the public hearing or (3), there is a substantial, material mistake of fact or law in the department staff's report on the application or in the report submitted by the Health Systems Agency.

Roanoke Memorial contends that it did produce significant, relevant information not previously presented at and not available at the time of the public hearing. This information consisted of (1) actual figures, as opposed to a projection, of the declining rate of the increase in the utilization of the radiation therapy equipment already on line at Roanoke Memorial and (2) information concerning its new "Clinic 1800 dual capacity linear accelerator" which was expected to become operational in January of 1985.

The Commissioner concluded that Roanoke Memorial had showed good cause by the introduction of significant,

relevant information. The information relating to the rate of increase in utilization consisted of actual figures which were not available to Roanoke Memorial until the end of its fiscal year, September 30, 1984. I will not undertake to detail all of that information here. I think it is sufficient to state that this information has a direct bearing upon the actual growth rate. The growth rate, of course, bears directly upon the need for additional capacity. Lewis-Gale's methodology used to predict need necessarily relied upon projections as to growth. The information introduced by Roanoke Memorial allegedly was based upon its actual experience. This information demonstrated an experienced growth rate which varied significantly from the projections. While the actual experience for the fiscal year ended September 30, 1984, does not necessarily render projections concerning future growth invalid, it most assuredly is relevant and, in the Commissioner's view, significant. On this record, the Court cannot say that the Commissioner was necessarily wrong.

As previously stated, the Health Systems Agency filed in a timely fashion an Answer in this appeal by Roanoke Memorial. Since the "good cause" case decision and the case decision on the CON application are both properly before the Court in this case, and since the basic law, Rule 2A:1 and the Administrative Process Act make the Health Systems Agency a party, it would appear that the Health Systems Agency is entitled to participate in the Roanoke Memorial Appeal.

Since most, if not all, of the rulings which have been made or are to be made in this case will be appealed, it would appear appropriate to me to withhold the entry of a formal Order on the issues herein decided until the sole remaining issue is also decided.

November 26, 1985

*Roanoke Memorial Hospitals v. James B. Kenley, M.D., State Health Commissioner, et al. - Chancery No. 77CH85-03526*

The sole remaining matter before this Court arises from an appeal by Roanoke Memorial Hospitals (Roanoke Memorial) from a case decision by the State Health Commissioner rendered on January 22, 1985. By this decision,

the Commissioner issued a Certificate of Public Need (CON) to Lewis-Gale Hospital, Inc. (Lewis-Gale), authorizing Lewis-Gale to establish radiation therapy services. The parties at this stage of the proceeding are Roanoke Memorial, Lewis-Gale and the State Health Commissioner. The Southwest Virginia Health Systems Agency, Inc., participated in the CON process until just recently, when it was forced to withdraw for financial considerations.

The substantive law applicable to CON proceedings (the "Basic Law") is found in Sections 32.1-102.1 through 32.1-102.11 of the Code of Virginia (Code). Section 32.1-102.6 of the Code does contain some procedural provisions. So far as is important at this stage of this proceeding, this Section provides that the procedure to be followed, generally speaking, is found in the Administrative Process Act (Sections 9-6.14:1 through 9-6.14:20 of the Code). Rule 2A of the Rules of the Virginia Supreme Court is applicable to appeals in cases arising under the Administrative Process Act. However, Rule 2A is not involved in this decision at this stage.

At this point, I think it is important to discuss one procedural aspect of this matter so that the parties will clearly understand what standards have been applied by the Court in the review process. The Administrative Process Act envisions a formal hearing pursuant to Code Section 9-6.14:12 in all cases in which informal proceedings pursuant to Code Section 9-6.14:11 have not disposed of the case. As a result of a ruling by the Circuit Court of the City of Richmond, the parties were not afforded the opportunity for a formal hearing. One of the consequences of this is that the testimony before the Commissioner was not under oath and not subject to cross-examination. Another consequence is that Code Section 9-6.14:17 distinguishes between the function of the Court in reviewing decisions resulting from formal proceedings and those resulting from informal proceedings. However, the decision by the Commissioner is obviously in the form one would expect to result from a formal proceeding. Additionally, a transcript was made of the testimony given at a two-day, informal, fact-finding conference. The parties have not requested permission to put on additional evidence and the parties have briefed and argued this matter as if they expect the decision by this Court to be made on the Agency record as if a formal proceeding had been held. Accordingly, my decision will be governed by the

provisions of Code Section 9-6.14:17 relating to decisions to be made on the Agency record.

Section 32.1-102.3 of the Code sets forth the standards governing the issuance of a CON certificate. Briefly stated, the Commissioner is directed to consider 20 factors and is enjoined from issuing or approving a CON certificate unless he has determined that a public need for the project has been demonstrated. Furthermore, his decision to issue a certificate is required to be consistent with the most recent applicable provisions of the State Health Plan and the State Medical Facilities Plan, unless he finds the provisions of either plan to be "inaccurate, outdated, inadequate or otherwise inapplicable." The Commissioner made no such finding in his case decision, and accordingly, his decision must be consistent with those two plans.

As provided in Code Section 9-6.14:17, the burden is on the complaining party, Roanoke Memorial, to demonstrate an error of law. Four "issues of law" are set forth in this Section. One of these issues of law is the "substantiality of the evidential support for findings of fact." In reviewing the substantiality of evidence for findings of fact, the decision is to be made on the Agency record, and the Court's duty is limited to determining whether there was "substantial evidence" upon which the Agency could reasonably find them to be as it did. This Section makes clear that the Agency, and not the Court, is the trier of fact. The Court's discretion in reviewing issues of fact is further limited by the admonition to "take due account of the presumption of official regularity, the experienced and specialized competence of the Agency, and the purposes of the basic law under which the Agency has acted." A finding of fact is, as a matter of law, supported by "substantial evidence" unless, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion. *Virginia Real Estate Commission* v. *Bias*, 226 Va. 264, 308 S.E.2d 123 (1983). As counsel for Roanoke Memorial observed in his oral argument on this matter, the burden upon a complaining party is a heavy one indeed.

The Commissioner made 41 findings of fact. I will not attempt to discuss the evidential support for each finding of fact, nor will I attempt to discuss each one of the factors enumerated in Code Section 32.1-102.3. Some of these considerations, for example numbers 12, 13, 14, 15, 16 and 20, are not even relevant. Other consid-

erations, such as considerations numbers 1, 3, 5, 6, 10 and 11, are either not disputed at all or are so obviously supported by the record that they do not merit further discussion.

The real issues involved in this case are whether there is a need for an additional linear accelerator in Lewis-Gale's "medical service area" and whether the Commissioner's decision is consistent with the State Health Plan and the State Medical Facilities Plan. These two issues are closely related, and the significant facts in this record bear upon both of them.

Lewis-Gale is owned by the Hospital Corporation of America. In the context of the cost of this project, the financial resources of the Hospital Corporation of America are boundless. The Hospital Corporation of America owns three other hospitals which are either in the same medical service area or just on the fringe. In addition, Lewis-Gale has a number of clinics throughout this area. Considering these facts together with the significant number of cancer cases being diagnosed at the Lewis-Gale Clinic, it is very apparent that Lewis-Gale will succeed with its project financially. At the very least, the evidence certainly would support the Commissioner's finding on this issue. However, because of the close proximity of Lewis-Gale and Roanoke Memorial, if no need for an additional linear accelerator exists, then Lewis-Gale's success will be at Roanoke Memorial's expense. This would, I suggest, violate the clear policy of the basic law and the plans. There is a standard (6,000 treatments per year) for determining when a linear accelerator is fully occupied. The better evidence in this record suggests that while these machines can perform more treatments, at 6,000 treatments per year, they are cost-efficient and there is a reasonable assurance of quality in each treatment. There were undisputed figures for the number of treatments actually given in the medical service area in the years preceding the application. What could have been resolved by simply dividing the number of machines into the number of treatments was very greatly complicated by the fact that Roanoke Memorial had acquired a CON certificate for a new linear accelerator prior to Lewis-Gale's application. This linear accelerator, however, was not on line at the time of the Commissioner's decision. Furthermore, Roanoke Memorial's new machine is a higher energy accelerator than the one proposed for Lewis-

Gale. The blue book and the better weight of the evidence, including Roanoke Memorial's application for the unit in question, Dr. Lougheed's extraordinary testimony to the contrary notwithstanding, Roanoke Memorial's machine will most likely be fully occupied at somewhat less than 6,000 treatments per year. However, the State Hospital Plan in establishing the 6,000 standard makes no distinction between the utilization standards for differing energy level linear accelerators. Further complications arose from the methodology used by Lewis-Gale to project need. The State Hospital Plan provides that no additional radiation unit should be opened in a given "medical service area" unless each of the existing units is performing at least 6,000 treatment visits per year. The CON application regulations define medical service area as the geographical territory from which at least 75% of the patients come or are expected to come to existing or proposed facilities. In its methodology, Lewis-Gale included population from Planning District 12. Planning District 12 is composed of the Counties of Franklin, Pittsylvania, Henry and Patrick. The City of Danville is located in Pittsylvania County, and, quite obviously, all or a significant portion of Planning District 12 is in the medical service area of Danville Memorial Hospital. Danville Memorial also has radiation therapy services available. The better evidence in this record would tend to indicate that a significant portion of Planning District 12 is not in Lewis-Gale's medical service area. Furthermore, the Commissioner found that Lewis-Gale had demonstrated a need for the additional unit in Health Services Area 3. The Health Services Area includes Danville and Lynchburg as well as Roanoke and is clearly not synonymous with the medical service area referred to in the Code. The unit at Lynchburg General Hospital is performing comfortably in excess of the 6,000 treatment visits per year standard. The unit at Danville Memorial does not begin to approach the 6,000 standard, and there is no apparent reason to believe that it will in the foreseeable future. Based upon actual treatment visits performed by existing, operational units for the reporting year of 1984, the evidence established that each unit was performing an average of 7,975 treatments in Roanoke Memorial/Lewis-Gale medical service area. For the entire HSA 3, there were five units in operation. The average for these five units was 7,055 treatments. If a fourth unit is factored into

the 1984 figures for the medical service area, then the average per unit drops to 5,981. However, if the total number of treatments in the medical service area increases at anywhere near the rate that it has in the past, the average per unit should have exceeded 6,000 for 1985. If the additional machine is factored into the 1984 figures for the entire HSA, the average per unit drops from 7,055 to 5,879. Further complicating this aspect of the case is that the State Hospital Plan does not mention averaging, and it is highly questionable whether that is proper if the effect of it is to violate the 6,000 standard. Lastly, as is apparent from the record, much of the information upon which the Commissioner had to base his decision consisted of projections and estimates.

As can be seen from the foregoing discussion, the problems presented by this case to the trier of fact were very real indeed. It is very apparent to me that the real question involved in this case is whether the 6,000 standard is absolute or whether there is flexibility built into the plans. The State Hospital Plan seems to indicate that there is flexibility. In fact, HSA 3 is specifically mentioned as an area in which some flexibility ought to be allowed. The Commissioner has in prior decisions obviously considered this standard to be flexible and did so in this case. Roanoke Memorial is performing well and enjoyed a handsome profit in the operation of its radiation service in the last year for which actual figures are available. The Commissioner determined, in essence, that the introduction of a new service at a competing hospital would not violate the plans nor the clear policy of the basic law. After a full and complete review of this record and after considering the standard for review established by Code Section 9-6.14:17, the Court cannot say that the Commissioner was necessarily wrong or that Roanoke Memorial has demonstrated any other error of law. Accordingly, it is my opinion that the decision of the Commissioner ought to be affirmed.