# CIRCUIT COURT OF ACCOMACK COUNTY

Accomack County

v.

Robert G. Burnley,
Director of the
Virginia Department of
Environmental Quality
and the Virginia Department
of Environmental Quality

October 5, 2004

Case No. (Chancery) 04CH081

BY JUDGE GLEN A. TYLER

In this suit in equity, the Court must decide, on demurrer, whether a letter from the Virginia Department of Environmental Quality to the County of Accomack, Virginia, denying the County's petition requesting relief from a Consent Order, is an appealable case decision.

The County's Bill of Complaint, including exhibits incorporated therein, alleges, in pertinent part, factual circumstances summarized below and raises a legal question for the Court's consideration.

The County's Bill asserts as a legal matter that a certain Consent Order was entered in 1998 by the Department of Environmental Quality (DEQ), with the County's consent, but that the Order was without any legal authority and is therefore void *ab initio*.

Factually, the Bill alleges that the County, notwithstanding its having no obligation to do so, has complied with the Consent Order and the requirements therein for its termination. The Bill alleges that the County had a permit in 1974 from the Virginia Department of Health for its Wattsville landfill. The Health Department's duties to regulate waste disposal were thereafter

transferred to the Virginia Department of Waste Management (DWM). The DWM approved the County's closure of the landfill in November of 1988. Shortly thereafter new solid waste management regulations became effective that the County alleges were by their own terms not applicable to the previously closed County landfill. Nevertheless, DEQ, successor regulatory authority to DWM, notified the County in 1997 that it was in violation of the regulations at the closed Wattsville landfill. The matter was eventually resolved by the 1998 Consent Order.

The Bill, in some detail, alleges how the County has since 1998 complied with the Order, including a chronology of events and actions. The Bill also alleges the DEQ's failures to act or respond to the County's various submissions in compliance over the years.

Finally, the County alleges that, in a letter to the Director of the DEQ dated February 18, 2004, the County Administrator, on behalf of the County, petitioned the DEQ, stating that the County had promptly met the letter and spirit of the Consent Order, without responses from DEQ for years in certain instances, submitted a final report and summary as required in the Order and reminded the Director that it had "requested the termination of the Order on June 28, 2002," and stated that the County had "heard nothing with regard to our request." The 2004 letter in its petition to the Director "requests your assistance in resolving this impasse."

The County, in its Bill of Complaint, alleges that it received a response by letter dated March 3, 2004, Bill of Complaint Exhibit 3. This is the letter that is at the heart of this case. The letter from DEQ acknowledges that the County's petition is "reiterating" previous requests to terminate the Order. The DEQ letter clearly indicates that it disputes the County's contentions that the County has complied with the Order, or at least with present regulations. It states that DEQ wishes to continue to study the matter because of "results of groundwater monitoring" but without stating in the letter when any monitoring occurred and without giving any clear identification of DEQ fact finding. The letter finally responds to the County's petition by stating obliquely "Department staff recommends that the order not be terminated. . . ."

Proceeding now to the DEQ's demurrer filed by the Attorney General of Virginia on its behalf, it contends that the March 3, 2004, letter is not an appealable administrative decision. It contends that the letter is a mere communication of a staff recommendation and a mere communication of an intention to conduct informal fact finding. The DEQ's position is that the letter is not a case decision. It cites, among other authority, *Kenley v. Newport News General & Non-Sectarian Hosp. Ass'n, Inc.*, 227 Va. 39 (1984).

The DEQ contends in its demurrer that it made no factual determination in the letter. The demurrer implies that facts had not been gathered over the years regarding compliance with the landfill Consent Order relative to termination of the Order.

Proceeding then to analyze the matter, it is important to recognize that this case is not about whether the County is or has been generally, or at Wattsville specifically, in violation of solid waste management regulations, either in 1997 or at the present time. In other words, this case is not about whether the DEQ can protect the public or the environment from violations in Accomack County by the County or anybody else. This case is about whether Accomack County should continue to be subject to the 1998 Consent Order. The County sues to be out from under that Order.

Regarding the legality of the Consent Order, the County does not now sue in order to appeal a 1998 case decision. A litigant may always attack subject matter jurisdiction. An administrative agency cannot enlarge its own jurisdiction nor can jurisdiction be conferred upon the agency by the parties before it by consent or waiver. 2 Am. Jur. 2d, *Administrative Law*, § 283 (2004).[1] This case does not ask the Court to substitute its interpretation of administrative regulations for that of the agency, but whether or not there was any authority for the Order. The final word on matters of law is for the Court. 2 Am. Jur. 2d, *Administrative Law*, § 490 (2004).

Regarding the allegations in the County's Bill of Complaint that the DEQ has not responded to its submissions over the years pursuant to the Consent Order and has not responded for great lengths of time to requests for termination of the Order, agency inaction may be reviewed by the Court. 2 Am. Jur. 2d, *Administrative Law*, § 444 (2004). It is clear from the Bill and especially from the exhibits incorporated that the County raises a legitimate issue whether the DEQ's continual studying is legitimate and should be considered by the Court as reviewable. Where agency inaction has the same impact on the rights of the parties as denial of relief, the inaction would be tantamount to final agency action. 2 Am. Jur. 2d, *Administrative Law*, § 461 (2004).

Regarding the issue of final agency action, the County contends in detailed factual allegations that it has fully complied with the Consent Order and its termination requirements. If the County's contentions about DEQ's

---

[1] The article in 2 Am. Jur. 2d, *Administrative Law*, is primarily concerned with the Federal administrative law under Acts of Congress, but it is highly analogous for state law purposes.

delays are true, judicial review will not disrupt the orderly process of DEQ's regulatory enforcement. 2 Am. Jur. 2d, *Administrative Law*, § 459 (2004).

The Court will turn now from a general to a specific examination of the law of Virginia on the subject of ripeness for appeal. The definition of "case decision" is found in Va. Code Ann. § 2.2-4001 (2004 Cum. Supp.). The definition includes:

> Any agency . . . determination that, under laws or regulations at the time, a named party as a matter of . . . present fact . . . may be . . . in violation of such law or regulation . . . . or may not be in compliance with any existing requirement for obtaining . . . a . . . right or benefit.

The Consent Order can be substituted for "laws or regulations at the time" and termination of the Order is a "right or benefit."

The County's question, whether it has *already* complied with the Order is a matter of facts already established, if they can be proved, not whether there may be groundwater problems hereafter. And the DEQ's letter of March 3rd simply says the Director concludes that the County has not complied and is not now entitled to termination, after all, regardless of what the staff wishes to hereafter study to see what else might exist at the landfill. Just as in *Kenley v. Newport News*, the allegations are that there have been in this case, before the Director had his letter written, meetings among the parties for years, extensive and detailed data submitted for years focused on the Order and its subject matter, and a decision which disregards what the County alleges will be proved existing facts that should have been given due regard. This letter of March 3, 2004, was a case decision because it included an application of the Consent Order, an "existing requirement," to the facts, or at least what the County alleges are the facts, of this particular case, that should have been articulated in the letter. *Strawbridge v. County of Chesterfield*, 23 Va. App. 493 (1996). The County's contention is well made that the DEQ could continue to fail to articulate the facts and put off what it contends is necessary for a case decision forever.

The demurrer is overruled.

REPORTER'S NOTE: This opinion is cited in *Rockbridge County v. Burnley* (2004), which is printed below at page 308.