## CIRCUIT COURT OF ROCKBRIDGE COUNTY

Rockbridge County

   v.

Robert G. Burnley et al.

December 21, 2004

Case No. CH04000137-00

BY JUDGE MICHAEL S. IRVINE

This case presents the issue whether a letter from the Virginia Department of Environmental Quality (DEQ) is a "case decision" for the purposes of the Virginia Administrative Process Act (VAPA) such that the agency determination is ripe for appeal in the Circuit Court for Rockbridge County. This case comes before the Court on the Commonwealth's Demurrer and Motion to Dismiss for lack of subject matter jurisdiction. Respondents, the DEQ and Robert G. Burnley, Director of the Department (the Commonwealth), have demurred to and moved to dismiss the Petition for Appeal filed by Rockbridge County, Virginia. The County has moved to strike parts of the Commonwealth's Demurrer, arguing that the Demurrer presents facts that have not been alleged in the Petition for Appeal, and thus should not be considered by the Court when ruling on the Demurrer. Additionally, the County urges the Court to strike the Commonwealth's Exhibit A to the Demurrer, arguing that it is an improper offer of proof and should not be considered.

The dispute reaches the Court after a long and involved history. County's Petition for Appeal alleges the following facts. The County was issued Solid Waste Permit No. 75 by the State Department of Health for the operation of a landfill, authorizing the landfill to operate on approximately

160 acres. In 1986, the duties of the State Department of Health were transferred to the Department of Waste Management (DWM). In December 1988, the Virginia Solid Waste Management Regulations (VSWMR) became effective and replaced the 1971 Health Department Regulations that Permit No. 75 was issued under. The VSWMR allowed local government sanitary landfills to continue operations under the terms of their existing permits until the permit was either amended by the Executive Director of the DWM, or July 1, 1992, whichever came first.

The County submitted a required closure and post-closure plan to the DWM on December 21, 1990, and installed a required groundwater monitoring system by July 1, 1991. The VSWMR required the County to stop depositing waste in any part of the landfill that did not have a permitted double-lined disposal "unit" meeting the requirements of the VSWMR by July 1, 1992. The closure plan submitted by the County in December 1990 did not include the location of the County Landfill's Disputed Area, because the county had not used the area for waste disposal since 1988. The December 1990 closure plan was never approved or rejected by the DWM. The 1988 VSWMR did not require the landfill to be separated into discrete disposal "units."

In March 1993, the VSWMR were amended, extending the closure deadline to January 1994. A few months later, however, the amended VSWMR were preempted by House Bill 1205, which allowed landfills to continue operations within their area existing prior to October 9, 1993, until the "vertical design capacity" was reached. House Bill 1205 set out a set of criteria that the landfill had to meet, and the County complied with these criteria. The DEQ acknowledged the County's compliance and informed the County that no further approval by DEQ was necessary. The County submitted a revised closure plan in March 2002, informing DEQ of its intent to place waste in the Disputed Area of the landfill. DEQ did not respond to this closure plan. The VSWMR were again amended, effective 2003, and the regulations defined "vertical design capacity." The County asserts that it was in compliance with the regulations.

On December 11, 2003, DEQ sent the County a Notice of Violation (NOV), alleging that the County's disposal of waste in the Disputed Area was a violation of House Bill 1205. This NOV came 21 months after the County submitted its revised closure plan. In response to the December 2003 NOV, the County stopped disposing of waste in the Disputed Area. The DEQ sent additional NOVs dated February 18, 2004, June 14, 2004, and September 17, 2004, repeating the same allegations even though the County had already stopped disposing of waste in the Disputed Area.

The County alleged that it has made several attempts to settle the dispute with DEQ. The County met with DEQ staff and submitted a detailed analysis of its legal position to counsel for the DEQ. DEQ responded on June 7, 2004, in a letter from Larry M. Simmons, Deputy Regional Director of DEQ's Valley Regional Office (VRO), reaffirming the agency's determination that waste disposal in the Disputed Area was a violation of HB 1205. The County continues to dispute the agency's determination that it is in violation of law. The County claims that forced closure of the Disputed Area will result in substantial additional disposal costs of approximately $8,000,000 to $10,000,000.

The County filed a Notice of Appeal with DEQ on July 6, 2004, informing the agency that the County is challenging the agency action in the Circuit Court of Rockbridge County pursuant to the VAPA, the VWMA, and Part 2A of the Rules of the Supreme Court of Virginia. The County timely filed an action with the Court. DEQ and Robert Burnley filed a demurrer, alleging that the June 7, 2004, letter from DEQ Deputy Regional Director Larry M. Simmons is not a "case decision," so it is not subject to judicial review under the VAPA. Thus, the issue to be decided is whether the County's claim may proceed in the Circuit Court of Rockbridge County. Whether or not the June 7, 2004, letter is a "case decision" will resolve the issue.

## Discussion

The rather involved history of the dispute can be trimmed down to one precise issue: whether the June 7, 2004, letter from the DEQ is a "case decision" under the VAPA. If it is, then the County's action may proceed in the Circuit Court for Rockbridge County. If it is not, then the case must be dismissed for lack of subject matter jurisdiction.

The Virginia Waste Management Act provides that:

[A]ny person aggrieved by a final decision of the Board or Director under this chapter shall be entitled to judicial review thereof in accordance with the Administrative Process Act.

Va. Code Ann. § 10.1-1457(A) (2004). The requirements are that (1) a person (2) must be aggrieved (3) by a final decision of the Director (4) under chapter 14 (The Virginia Waste Management Act). That the VAPA applies does not appear to be in dispute.

The VAPA provides that:

> Any person affected by and claiming the unlawfulness of any regulation, or party aggrieved by and claiming unlawfulness of a case decision . . . shall have a right to the direct review thereof by an appropriate and timely court action against the agency or its officers or agents in the manner provided by the rules of the Supreme Court of Virginia.

Va. Code Ann. § 2.2-4026 (2004). The right to judicial review under the VAPA depends on whether there has been a case decision. A "case decision" is defined as:

> [A]ny agency proceeding or determination that, under laws or regulations at the time, a named party as a matter of past or present fact, or of threatened or contemplated private action, either is, is not, or may or may not be (i) in violation of such law or regulation or (ii) in compliance with any existing requirement for obtaining or retaining a license or other right or benefit.

Va. Code Ann. § 2.2-4001 (2004). Thus, the letter is a "case decision" if it is an agency "determination" that a named party is in violation of an existing law or regulation. The letter of June 7, 2004, alleges that the County is in violation of Va. Code § 10.1-1408.1(N) (House Bill 1205). The County is aggrieved by the decision because of the substantial costs it will incur if it is unable to use the Disputed Area of the landfill for disposal of waste. There appears to be no reason on the face of the statute why the letter of June 7, 2004, could not be considered a case decision under the VAPA.

The DEQ argues that the letter merely responds to the County's request for an interpretation of the status of the Disputed Area, and that it offers to resolve remaining issues through the VAPA. (See Memorandum in support of Demurrer and Motion to Dismiss p. 2.) DEQ argues that the letter was a courtesy to the County to explain its position, but was not a final determination because DEQ suggested that the parties proceed according to the VAPA. The VAPA's definition of a "guidance document" is a helpful comparison because it illustrates a type of document that would not be considered a case decision. The VAPA defines a "guidance document" as:

> [A]ny document developed by a state agency or staff that provides information or guidance of general applicability to the staff or public to interpret or implement statutes or the agency's rules or regulations, excluding agency minutes or documents that pertain only to the internal management of agencies.

Va. Code Ann. § 2.2-4001 (2004). The June 7, 2004 letter did not provide information that was of general applicability, rather it made fact determinations specific to the County.

That DEQ made specific fact determinations was important to the Circuit Court for the Accomack County when it recently decided a similar issue in favor of the party petitioning for judicial review of a DEQ action. In *Accomack County v. Robert G. Burnley and The Virginia Department of Environmental Quality*, (04CH081, Cir. Ct. Accomack, October 5, 2004, attached to the Memorandum in Opposition to the Demurrer as Exhibit B),[1] the court decided that a letter from the DEQ denying the County's requested relief from a consent order was an appealable case decision under the VAPA. In the Accomack County, the issue was whether agency inaction for a period of time was tantamount to a final agency determination. Part of the court's analysis was based on the unfairness of the agency's ability to avoid taking action for an indefinite amount of time. Here, the agency has not put off taking action, in fact, the agency has proposed to proceed with procedures under the VAPA.

In other respects, the facts of the present dispute are very similar to the case in Accomack County. For example, the court determined that the letter was a "case decision" because "it included an application of the Consent Order, an 'existing requirement,' to the facts, or at least what the County alleges are the facts, of this particular case, that should have been articulated in the letter." *Accomack County*, at 8 (citing *Strawbridge v. County of Chesterfield*, 23 Va. App. 493 (1996)).

In the present case, DEQ also applied an existing requirement, the VSWMR and House Bill 1205 specifically, to the facts of the particular case, namely the Disputed Area of the Rockbridge County Landfill. The County alleges that factual findings were made in the June 7, 2004, letter, including a discussion of the initial closing plan that the County submitted in 1990, the County's Gas Management Plan submitted in 1995, and a description of EPA regulations supporting DEQ's view that the Disputed Area cannot receive any more waste. (See Memorandum in Opposition to the Demurrer p. 17.)

---

[1] This opinion is printed above at page 83. [Reporter's Note]

In *Kenley v. Newport News Gen. & Non-Sectarian Hosp. Ass'n*, 227 Va. 39 (1984), the Supreme Court of Virginia observed that "[t]he Reviser's Notes to [Code § 9-6.14:4(D)] state that the >heart' of a case decision >is a fact determination respecting compliance with law'." *Id.* at 44 (quoting Code § 9-6.14:4, Reviser's Notes D). The court was determining whether either or both of two letters could be considered "case decisions" for the purpose of the VAPA. In finding that the first letter was not a "case decision," the court explained:

> The language of the Commissioner's letter of December 27, 1977, was no more than a general statement of position regarding certificates of public need. The letter . . . merely stated that any hospital service that is reactivated after an absence of twelve months is considered to be a new service. There was neither an application of law to Riverside's program of open heart surgery nor any finding of facts as to the kind of program Riverside was providing. We hold that this letter was not a case decision under the APA.

*Id.* at 45. In finding that the second letter was a case decision, the court said:

> We hold that the letter of November 21, 1978, however, was a case decision. Before the Commissioner wrote this letter, representatives of Riverside met with him and submitted extensive and detailed data about the Hospital's program of open heart surgery. The letter . . . focused on the Hospital's program, and it applied the rules and regulations to the facts.

*Id.* at 45. Thus, the factual determinations and application of those facts to a particular case seems to be the test that the Supreme Court of Virginia applied in determining whether agency correspondence constitutes a "case decision."

Applying that test to the instant case, the County appears to be correct that *Kenley* supports its position, and not the position of DEQ. The letter of June 7, 2004, allegedly makes several findings of fact that are specific to the Rockbridge County landfill and the Disputed Area in particular. The letter makes a finding that the County is in violation of law. This appears to be all that is required under *Kenley* for a letter to be a case decision.

The DEQ cites *Virginia Bd. of Medicine v. Virginia Physical Therapy Ass'n*, 13 Va. App. 458 (1991), *aff'd*, 245 Va. 125 (1993), for the proposition that an agency must have issued a case decision before the agency action is

appealable. However, in *Virginia Bd. of Medicine*, neither party argued that there had been a case decision. *Id.* at 468. The court also found that the Board's actions did not amount to a case decision because they had given notification to a party that an informal conference was to be held to determine whether that party had violated the law. In *Virginia Bd. of Medicine*, unlike the present case, the parties never actually held the informal conference, and the Board never applied the law to the specific facts of the individual case. *Id.* *Virginia Bd. of Medicine* is easily distinguishable from the present facts, because DEQ made specific findings that were applicable to the County in its letter of June 7, 2004. Additionally, the County alleges that it attended meetings with DEQ representatives and presented the DEQ with its arguments before receiving the DEQ letter.

## Conclusion

The DEQ letter of June 7, 2004, is a "case decision" under the VAPA because it is an agency "determination" that the County is in violation of an existing law or regulation. This meets the statutory requirements for a final decision under the VAPA. Additionally, the letter makes specific findings of fact and applies them to a particular case, which was a determining factor to the Virginia Supreme Court in *Kenley v. Newport News Gen. & Non-Sectarian Hosp. Ass'n*, 227 Va. 39 (1984). The VAPA provides that a person who is aggrieved by a "case decision" is entitled to judicial review. The Demurrer should not be sustained because the County has alleged facts sufficient to sustain its cause of action, namely, that the letter of June 7, 2004, is a case decision, and that the County has a right to have that adverse decision reviewed by the court.