## CIRCUIT COURT OF ROCKBRIDGE COUNTY

Rockbridge County

v.

Robert G. Burnley et al.

August 17, 2005

Case No. CH04000137-00

BY JUDGE MICHAEL S. IRVINE

This case involves judicial review of a decision of the Virginia Department of Environmental Quality (DEQ). This Court previously ruled that a letter dated June 7, 2004, was a "case decision" for the purposes of the Virginia Administrative Process Act (VAPA). The matter has been briefed and argued orally and now has been submitted for determination. The parties have submitted a "Joint Stipulation of Fact" in lieu of the Court taking evidence. The dispute between the parties has a long and involved history, which the Court previously chronicled in its letter opinion, dated December 21, 2004.[1] Reference is made to the "Joint Stipulation of Fact" and that history which will not be repeated here.

The issue before the Court requires the application of rules governing judicial review of agency decisions, the construction of statutes and regulations according to their plain meaning, and an evaluation of the substantiality of evidence in the agency record to support the agency's decision. The State argues that there is substantial evidence in the record to support the agency's conclusion and therefore the Court must defer to the agency's decision. However, it is not really the facts that are in dispute. The parties have stipulated as to the facts. It is the interpretation of the statute, Virginia Code § 10.1-1408.1(N) (hereinafter H.B. 1205),

---

[1] 66 Va. Cir. 308. [Reporter's Note]

that is in dispute. Accordingly, the issue before the Court is whether, using familiar principles of statutory construction and applying appropriate deference to the agency's decision, the agency's interpretation of the statute should be upheld. For the reasons hereinafter stated, the Court finds that the conclusions of the agency as stated in its June 7, 2004, letter, including the last sentence of the third paragraph stating *"Accordingly, facilities or portions thereof which closed prior to 1988 would not qualify for the continued operation authorized under House Bill 1205."* was inconsistent with the plain meaning of the statute, erroneous, arbitrary, and not in accordance with the applicable law.

The State claims that the "disputed area" was closed prior to the enactment of H.B.1205. The County did submit a closure plan, which was subsequently amended. Neither was acted upon by the appropriate agency at the time, nor was the agency required to act upon such plans. The State now claims that, because these plans were submitted, the area that was identified as being "closed" thereby became a separate unit. That determination is the essence of the July 7, 2004, letter that this Court previously determined was a case decision. The State found in that letter that the use of that "unit" was an unlawful expansion of the landfill.

The County claims that the landfill, including the "disputed area", is all one unit. Joint stipulation # 10 states that the closure plan submitted to DWM on or before December 21, 1990 did not provide for closure activities in the disputed area because no solid waste had been deposited in that area after 1988 and therefore the County was not required to submit a plan for that area. The County points out that the regulations in effect at the time required the entire landfill to be closed prior to July 1, 1992. As of December 21, 1990, the landfill had excess capacity without including the disputed area in its plan. Therefore, the County argues that, since waste had not been placed in the disputed area since 1988, there was no need to include the "disputed area" in the 1990 closure plan. Accordingly, the 1990 plan identified that area "as closed prior to 1988." As stated previously, the plan was not reviewed by the State nor was the State required to review it. Thereafter, H.B. 1205 was enacted and became effective July 1, 1993. By letter dated October 4, 1993, the County submitted its H.B. 1205 certification. On June 3, 1994, the County submitted a letter from its consultant explaining that, although the County had previously established their closure plan to cover the area that they believed would be utilized prior to the original required closing date of July 1, 1992, since that date had been extended by H.B. 1205, which would allow the County to use the facility to its vertical capacity, the

County wished to "continue utilizing their facility and have established the footprint and final proposed grade as outlined on Sheet 1 of 1, attached". Jt. Stip. 20 and 21. This document included the "disputed area" as part of the area to be used by the County pursuant to H.B. 1205. Thus, the County claims that it never actually closed the disputed area and therefore there was no separate unit created and, even if it did temporarily close that area, such closing did not create a separate unit. The County relies upon a plain reading of the statute that states, if the area was previously used, it can continue to be used.

In order to decide the issue, an analysis of H.B. 1205 needs to be made. H.B. 1205 clearly and specifically allowed "facilities" which were permitted prior to March 15, 1993, and "upon which solid waste has been disposed of prior to October 9, 1993," to "continue to receive solid waste until they have reached their vertical capacity. . . ." There is no dispute that the Rockbridge County landfill was permitted prior to March 15, 1993. The permit was for one facility that encompassed the entire landfill including the "disputed area." There is also no question that the landfill, including the disputed portion, received solid waste prior to October 9, 1993. The statute does not address "separate units" nor does it address "closed areas." The statute only speaks of "facilities." The State claims certain EPA regulations and an EPA technical manual support its finding that the disputed area constituted a separate unit. However, as pointed out by the County, those regulations and the technical manual did not come into existence until after H.B. 1205 was enacted. On the other hand, state regulations in effect at the time, setting forth requirements for "closing," do not support the State's argument that the "disputed area" was legally "closed." In addition, the County amended its 1990 closure plan for the entire facility in 1994. That plan specifically included the "disputed area' as an area that the County planned to use pursuant to its H.B. 1205 certification. Although it is acknowledged by the State that such a plan was submitted, the plan was evidently misplaced and not within the records of the agency at the time of its June 7, 2004, decision.

The Statute itself is clear and unambiguous. Moreover, the decision of the agency was not based upon interpretation of any agency regulation. Rather, the decision necessarily interpreted the Statute. To the extent the agency used regulations to apply the Statute, the interpretation and application of the regulations was inconsistent with the plain meaning of the Statute. Based on the foregoing and upon consideration of the entire record, there is nothing in the record to support the agency's conclusion that the "disputed area" was *legally closed* or that it in any way

constituted a separate "unit." The State relies upon the documents submitted by the County to support its conclusion that the disputed area was closed. However, just because the County labeled the area as closed does not make it so. Also merely labeling the area as "closed" does not legally make it a separate unit. Furthermore, because the "disputed area" is part of the original permitted "facility" where solid waste had previously been disposed, a plain reading of the Statute demonstrates that the County is authorized to use the "disputed area" in accordance with its H.B. 1205 certification. The County included the area in its amended H.B. 1205 certification and thereby clearly indicated its intention regarding the disputed area. That document was misplaced by the agency and not within the knowledge of the agency at the time of its June 7, 2004, decision.

Accordingly, it is the judgment of this Court that the County be permitted to use the "disputed area" for the disposal of solid waste in accordance with H.B. 1205. However, in order to do so, the County will need to provide required financial assurances and update its closure and post-closure plans to ensure that the disputed area is included. In addition, DEQ should be given the opportunity to review the County's prioritization rank in view of the fact that the prior ranking did not take into consideration the disputed area. Accordingly, this matter should be remanded to the agency for further proceedings not inconsistent with this decision. In view of the Court's holding herein, the Court does not reach the constitutional and disparate treatment arguments of the County. The Court has given due consideration to the County's request for attorneys' fees and denies such request. The Court finds that the agency's decision was based in part on incorrect information provided by the County, i.e. that the disputed area was closed. Under these circumstances and the other circumstances of this case, an award of attorneys' fees would be unjust.