COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Kelsey and McClanahan
Argued at Richmond, Virginia


DAVID A. GARRAGHTY

                                                              OPINION BY
v.        Record No. 0695-04-2              JUDGE JAMES W. BENTON, JR.
                                                        FEBRUARY 1, 2005
VIRGINIA RETIREMENT SYSTEM AND
  VIRGINIA DEPARTMENT OF CORRECTIONS


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                          Randall G. Johnson, Judge

          James B. Thorsen (Thorsen & Scher, on briefs), for appellant.

          Brian J. Goodman, Assistant Attorney General (Jerry W. Kilgore,
          Attorney General; Guy W. Horsley, Jr., Special Assistant Attorney
          General, on brief), for appellees.


        The trial judge found that the Circuit Court of Greensville County previously had decided

appeals under the State Grievance Procedure statutes concerning David A. Garraghty's

grievances about retirement benefits and eligibility for the Virginia Law Officers Retirement

System.  The trial judge ruled, therefore, that Garraghty could not continue to appeal these

grievance issues under the Administrative Process Act.  Garraghty contends the trial judge erred

in dismissing his petitions for appeal.  We disagree and affirm the orders dismissing the appeals.

                                              I.

        The record in this appeal is sparse and lacks an agency record that normally accompanies

an appeal under the Administrative Process Act.  We will endeavor to construct the procedural

posture of this case by reference to the pleadings filed in the trial court and the exhibits attached

to those pleadings.

According to the pleadings, David A. Garraghty began his career at the Department of Corrections as a correctional officer in 1973. In 1992, Garraghty was promoted to chief warden of the Greensville Correctional Center, where he remained until his retirement on January 1, 2003. The pleadings further indicate that in preparation for his retirement, Garraghty made inquiries regarding his retirement compensation.

In April 2002, Garraghty filed a grievance with the Department of Corrections under the State Grievance Procedure (Code §§ 2.2-3000 to 2.2-3008), asserting that his position as chief warden made him eligible for the Virginia Law Officers Retirement System (VaLORS) and alleging that "[t]he decision to not include his position in the VaLORS program was arbitrary and capricious."[1] In reply to the grievance, the regional director wrote that "Wardens are not identified in . . . Code [§ 51.1-212] as being members of VaLORS." On Garraghty's appeal of that finding, the Department of Corrections ruled that when VaLORS was first implemented wardens "were not listed as covered," that Garraghty was "aware since July 15, 1999 that [his] position was not included in this program," and that Garraghty's grievance was untimely because it was not filed within thirty days of July 15, 1999. On Garraghty's next appeal, the Department of Employment Dispute Resolution ruled that although the Department of Corrections determined in 1999 which employees were covered by VaLORS, Garraghty was not then "directly and personally" impacted by that determination. The Department of Employment

---

[1] In 1999, the General Assembly passed legislation establishing the Virginia Law Officers Retirement System, which is administered by the Virginia Retirement System. See Code §§ 51.1-211 to 51.1-220. Under VaLORS an "'[e]mployee' means . . . correctional officer as that term is defined in [Code] § 53.1-1." Code § 51.1-212. Thus, by incorporating this statutory reference, "'Correctional officer' means a duly sworn employee of the Department of Corrections whose normal duties relate to maintaining immediate control, supervision and custody of prisoners confined in any state correctional facility." Code § 53.1-1. Documents in the record indicate that under certain conditions, a covered employee with twenty-five years of service retiring on or after October 1, 1999 is eligible for early unreduced retirement at age 50. VaLORS also supplements retirement pensions until the age of 65 for those employees hired after July 1, 1974 who have served 20 years of hazardous duty.

Dispute Resolution further ruled that (i) Garraghty's grievance was not time barred; (ii) "Chief Wardens do not meet the definition of 'correctional officer' because their 'normal duties' do not entail the 'immediate control, supervision and custody of prisoners' . . . [but, rather,] primarily include the 'manage[ment] and direct[ion] of the activities of the most complex prisons'"; and (iii) Garraghty's "grievance does not quality for hearing because [Garraghty] has not presented sufficient evidence that the [Department of Corrections] misapplied state policy by excluding him, as Chief Warden, from the VaLORS Program."[2]

---

[2] In his grievance, Garraghty had claimed "[t]he decision not to include his position . . . was arbitrary and capricious." In pertinent part, the state grievance procedure provides for hearings regarding the following:

> A. A grievance qualifying for a hearing shall involve a complaint or dispute by an employee relating to the following adverse employment actions in which the employee is personally involved, including but not limited to (i) formal disciplinary actions, including suspensions, demotions, transfers and assignments, and dismissals resulting from formal discipline or unsatisfactory job performance; (ii) the application of all written personnel policies, procedures, rules and regulations where it can be shown that policy was misapplied or unfairly applied; (iii) discrimination on the basis of race, color, religion, political affiliation, age, disability, national origin or sex; (iv) arbitrary or capricious performance evaluations; (v) acts of retaliation as the result of the use of or participation in the grievance procedure or because the employee has complied with any law of the United States or of the Commonwealth, has reported any violation of such law to a governmental authority, has sought any change in law before the Congress of the United States or the General Assembly, or has reported an incidence of fraud, abuse, or gross mismanagement; and (vi) retaliation for exercising any right otherwise protected by law.

> B. Management reserves the exclusive right to manage the affairs and operations of state government. Management shall exercise its powers with the highest degree of trust. In any employment matter that management precludes from proceeding to a grievance hearing, management's response, including any appropriate remedial actions, shall be prompt, complete, and fair.

The pleadings also indicate that during this same time period Garraghty filed another grievance with the Department of Corrections concerning his creditable compensation for retirement. The record does not contain a copy of this grievance or the initial response from the Department of Corrections. The record does contain, however, a ruling by the Department of Employment Dispute Resolution, which indicates that Garraghty believed this grievance qualified for a hearing under Code § 2.2-3004 and that Garraghty "claims that [the Department of Corrections] has failed to comply with state and federal law by refusing to provide his full creditable compensation to the Virginia Retirement System . . . for the purpose of computing his retirement pay." The Department of Employment Dispute Resolution made findings and conclusions, including the following: (i) although Garraghty contends his final compensation should include a factor for fringe benefits he received (for example housing, utilities, insurance and meals), the Retirement System has determined as a matter of policy that "only compensation in the form of salary is eligible for inclusion as part of the reportable compensation for retirement"; (ii) no policy or procedure required the Department of Corrections or any employing agency to provide the Retirement System information about perquisites for purposes of

---

C. Complaints relating solely to the following issues shall not proceed to a hearing: (i) establishment and revision of wages, salaries, position classifications, or general benefits; (ii) work activity accepted by the employee as a condition of employment or which may reasonably be expected to be a part of the job content; (iii) contents of ordinances, statutes or established personnel policies, procedures, and rules and regulations; (iv) methods, means, and personnel by which work activities are to be carried on; (v) termination, layoff, demotion, or suspension from duties because of lack of work, reduction in work force, or job abolition; (vi) hiring, promotion, transfer, assignment, and retention of employees within the agency; and (vii) relief of employees from duties of the agency in emergencies.

Code § 2.2-3004.

computing retirement benefits; and (iii) "this grievance cannot be qualified for hearing on the basis of an alleged misapplication or unfair application of state or agency policy."

Garraghty appealed the rulings on both grievances to the Circuit Court of Greensville County as permitted by Code § 2.2-3004(E). A judge of that court determined that only questions of law were presented by the petitions for appeal and found "in neither of the above referenced grievances did the Department of Corrections misapply or unfairly apply any personnel policy procedure rule or regulation." The judge affirmed the rulings in both grievances by an order entered February 3, 2003.

Two months later, the Retirement System sent a letter, dated April 4, 2003, to Garraghty's attorney acknowledging receipt of a letter "in which [Garraghty's attorney] requested information" about Garraghty's retirement benefit. The letter informed Garraghty's attorney that the Retirement System has a "longstanding policy to place no value on perquisites for the purpose of determining a member's creditable compensation," that its "calculation of . . . Garraghty's retirement benefit reflects the zero value of the perquisites noted in . . . Garraghty's letter of December 10, 2002," and further noted the following:

> Additionally, because the [Retirement System] does not maintain positions for every category of member, it relies on the participating employers to define an employee's eligibility to participate in the retirement system. In the specific case of correctional officers, the [Department of Corrections] has determined that only uniformed officers up to the rank of major are eligible for coverage under VaLORS. Eligibility for coverage under VaLORS is not determined by the [Retirement System].

The record does not contain either a copy of the letter from Garraghty's attorney that resulted in this response or a copy of Garraghty's letter dated December 10, 2002.

On April 7, 2003, Garraghty's attorney sent a letter to the Department of Corrections detailing the status of Garraghty's grievance concerning the VaLORS program. Alleging that the Department of Corrections' ruling that the grievance was time barred had been reversed on

- 5 -

appeal, Garraghty's attorney "request[ed] a review of this issue and written explanation and/or a final agency decision . . . on . . . Garraghty's eligibility for VaLORS." On April 24, 2003, the Department of Corrections responded, in pertinent part, that during the grievance process its "third step response to . . . Garraghty's grievance dated 6/7/02 stated, 'the Code of Virginia defines what positions are covered under the VaLORS program and I have no authority to place your position in this program.'"

Based on these letters of April 4, 2003 and April 24, 2003 from the two agencies, Garraghty filed petitions in the Circuit Court of the City of Richmond, alleging that these appeals arose under the Administrative Process Act. See Code §§ 2.2-4000 to 2.2-4033. The Department of Corrections and the Retirement System sought dismissal of the petitions, alleging that the court lacked "subject matter jurisdiction" to hear the appeals and that the principle of res judicata compelled dismissal.

The trial judge dismissed both appeals. He ruled that a judge of the Circuit Court of Greensville County had previously affirmed the rulings of the Department of Employment Dispute Resolution and that the order affirming these rulings "is final and cannot be appealed pursuant to Virginia Code Section 2.2-3004(E)." The judge also ruled that "the issue[s] Garraghty raised in his grievance[s] and that [were] addressed by [those rulings] . . . and the Greensville County Circuit Court cannot be pursued again in this Court."

II.

Garraghty contends the trial judge erred in dismissing his petitions. He argues that the Retirement System's letter of April 4, 2003 and the Department of Corrections' letter of April 24, 2003 meet the definition of "case decisions" under the Administrative Process Act. We disagree.

The Act defines a "case decision" as follows:

> [A]ny agency proceeding or determination that, under laws or regulations at the time, a named party as a matter of past or present fact, or of threatened or contemplated private action, either is, is not, or may or may not be (i) in violation of such law or regulation or (ii) in compliance with any existing requirement for obtaining or retaining a license or other right or benefit.

Code § 2.2-4001.

By the statute's plain meaning, a case decision is the resolution of an agency "proceeding," (a "regular and orderly progression of a lawsuit"), or an agency's "determination," ("a final decision by a court or administrative agency"). Black's Law Dictionary 1221, 460 (7th ed. 1999). Accordingly, the "heart" of a case decision is a "fact determination respecting compliance with the law," Kenley v. Newport News Gen. & Non-Sectarian Hosp. Ass'n, 227 Va. 39, 45, 314 S.E.2d 52, 55 (1984), and one that involves "an application of the law to the facts of [a] particular case." Strawbridge v. County of Chesterfield, 23 Va. App. 493, 499, 477 S.E.2d 789, 792 (1996); see also Virginia Bd. of Med. v. Virginia Physical Therapy Ass'n, 13 Va. App. 458, 468, 413 S.E.2d 59, 65 (1991) (holding that "[a]bsent a case decision as defined by the [Administrative Process Act], the [petitioner] could not and cannot bring a suit against [an agency] to challenge the alleged unlawful de facto rule or position of the [agency]").

As a threshold issue, we note that the communications Garraghty received from these agencies are not excluded from the Act's definition of "case decision" merely because they are in the form of letters addressed to his attorney. Greenwald Cassell Ass'n v. Dep't of Commerce, 15 Va. App. 236, 239, 421 S.E.2d 903, 905-06 (1992) (holding that a cease and desist letter was the Department's determination that the defendant was in violation of law, and as such was a "case decision"). In this case, however, neither letter involves the application of facts to law in an agency proceeding -- the essence of the definition of a case decision. Rather, both letters

respond to Garraghty's request for "information" and reference decisions made in past proceedings.

The April 7, 2003 letter from Garraghty's attorney was unmistakably a request for a clarification of the Department of Corrections' position concerning the grievance matter. The letter related the steps Garraghty had taken during the grievance process and asserted that during the process the Department of Corrections had incorrectly rejected his grievance on a procedural basis and "has never formally stated its position and/or reasoning as to . . . Garraghty being eligible or not for VaLORS." The letter "request[ed] a review of this issue and written explanation and/or final agency decision of the . . . position on . . . Garraghty's eligibility for VaLORS."

In response, the Department of Corrections' letter of April 24 did no more than explain that it had indeed responded to the merits during the grievance process and that both the Department of Employment Resolution and the Greensville Circuit Court had affirmed the denial of a grievance hearing for that precise reason. This letter fails the Act's definition of "case decision" because it simply re-informed Garraghty of the decisions that already had been made through the grievance procedure. The letter provided a written explanation of the reasoning denying the grievance, explaining that the "response to . . . Garraghty's grievance . . . stated 'the Code of Virginia defines what positions are covered under the VaLORS program and I have no authority to place your position in the program.'" In further response to Garraghty's request for an "explanation," the letter closed with the following paragraph:

> The Department of Employee Dispute Resolution ruled that Mr. Garraghty's grievance was not qualified for a hearing and why. This was consistent with Mr. Angelone's third step response. It was this decision that the grievance was not qualified for a hearing that the Greensville Circuit Court affirmed.

Thus, the letter expressly references the Department of Corrections' earlier determination of Garraghty's claim made in the grievance procedure, and it further referenced the Greensville Circuit Court's affirmance of this determination. The letter simply referred to the agency's past decisions and, thus, cannot be considered an agency's "determination" or "case decision" under the Act.[3]

As we earlier noted, the record does not contain the letter from Garraghty's attorney that generated the Retirement System's April 4, 2003 letter. Thus, the trial judge and we are informed of its tenor only by the Retirement System's response, which states that the attorney "requested information regarding the retirement benefit for . . . Garraghty." The record contains no indication that the attorney's letter had the effect of filing a claim for retirement benefits or sought from the Retirement System a "fact determination respecting compliance with the law." Kenley, 227 Va. at 45, 314 S.E.2d at 55.[4]

As the Attorney General aptly notes, "for reasons known only to him, Garraghty pursued [the State Grievance Procedure] avenue on the VaLORS issue and the creditable compensation

---

[3] In the petition for appeal to the circuit court, Garraghty sought to characterize this letter as a case decision, alleging that

> [t]his appeal is taken from the Virginia Department of Corrections . . . final agency decision set forth in its letter of April 24, 2003 denying your Appellant's request to recognize and/or classify his former position of warden as that of a "correctional officer," so as to be covered by the VaLORS program and administered by the Virginia Retirement System . . . .

[4] In the petition for appeal to the circuit court, Garraghty sought to characterize the Retirement System's response as a case decision, alleging that

> [t]his appeal is taken from the Virginia Retirement System . . . final agency decision set forth in its letter of April 4, 2003 denying your Appellant's request to calculate and/or recalculate his retirement by adding the value of the perquisites included in his job . . . [and] den[ying] your Appellant's request to be included in coverage under the Virginia Law Officers Retirement System . . . .

issue." Indeed, by filing petitions for appeal from responses to his letters seeking an "explanation" from the Department of Corrections and "information" from the Retirement System about the bases underlying the adverse rulings on his grievances, Garraghty merely resurrected the grievance issues and sought to ascribe to these explanatory responses new and independent agency actions. In the absence of a case decision, however, Garraghty had no jurisdictional basis to invoke any provision of the Administrative Process Act. He merely sought to continue the grievance process in an unorthodox manner not sanctioned by any statute or case law.

The Attorney General argues that "Garraghty has exhausted his administrative remedies with respect to these two issues, and that he cannot take 'another bite at the apple' by commencing separate, additional appeals under the [Administrative Process Act] to re-litigate the same issues." We need not, and do not, decide whether Garraghty's claim that he is entitled to VaLORS benefits and creditable compensation for perquisites under retirement programs administered by the Retirement System must be pursued exclusively under either the State Grievance Procedure or the Administrative Process Act.[5] We hold, based upon the issue fairly

---

[5] The State Grievance Procedure provides that

> [i]t shall be the policy of the Commonwealth, as an employer, to encourage the resolution of employee problems and complaints . . . [and that to] the extent that such concerns cannot be resolved informally, the grievance procedure shall afford an immediate and fair method for the resolution of employment disputes that may arise between state agencies and those employees who have access to the procedure.

Code § 2.2-3000. The legislature has specified in Code § 2.2-3004 the types of grievances qualifying for a hearing (Code § 2.2-3004(A)) and the types of complaints not qualifying for a hearing (Code § 2.2-3004(C)).
The Administrative Process Act specifically addresses personnel actions in the following provision:

presented by this appeal, only that the two letters at issue in this appeal are not case decisions. They were responses to Garraghty's requests for information, not to an application or claim for benefits. Thus, Garraghty's petitions for appeal were nothing more than an attempt to relitigate the grievance procedure issues that had been finally decided in the Circuit Court of Greensville County.

For these reasons, we affirm the orders dismissing the petitions.

<u>Affirmed.</u>

---

B. Agency action relating to the following subjects shall be exempted from the provisions of this chapter:

\*    \*    \*    \*    \*    \*    \*

7. The selection, tenure, dismissal, direction or control of any officer or employee of an agency of the Commonwealth.

Code § 2.2-4002. <u>See generally</u> Op. Va. Att'y Gen. 31, 32 (rendered under a similar provision before the Act was recodified).